(91 Misc. Rep. 451)

PEOPLE v. GROUT.

(Supreme Court, Special Term, Kings County.　August, 1915.)

1. CRIMINAL LAW ⟨⟩1073—CERTIFICATE OF REASONABLE DOUBT—HEARING ON
MOTION.
　　The provision of Code Cr. Proc. § 529, that an application for a cer-
tificate of reasonable doubt whether a judgment of conviction should
stand shall be made to a regularly appointed Special Term of the Su-
preme Court held within the judicial district in which the conviction was
had, being mandatory, the court cannot direct that the motion be heard
by another justice.
　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec.
Dig. ⟨⟩1073.]

2. CRIMINAL LAW ⟨⟩1073—CERTIFICATE OF REASONABLE DOUBT—VARIANCE
—PERJURY.
　　Where one indicted for perjury in swearing to an affidavit attached to
the "report of the condition" of a bank, which affidavit is not one re-
quired by law, is convicted of perjury in swearing to an affidavit attached
to the "quarterly report" of the bank, a different paper, his motion for a
certificate of reasonable doubt should be granted.
　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec.
Dig. ⟨⟩1073.]

Edward M. Grout was convicted of perjury, and applies for a cer-
tificate of reasonable doubt whether the judgment should stand.　Ap-
plication granted.

See, also, 155 N. Y. Supp. 117.

James C. Cropsey, Dist. Atty., of Brooklyn, for the People.
Stephen C. Baldwin, of Brooklyn, for defendant.

SCUDDER, J.　Application for a certificate that there is a reason-
able doubt whether the judgment of the County Court of Kings Coun-
ty convicting defendant of the crime of perjury should stand.　The
district attorney challenges the qualification of the justice presiding at
the regularly appointed Special Term of the Supreme Court, to which
the application for the certificate of reasonable doubt must be made
under section 529 of the Code of Criminal Procedure, upon the ground
that said justice is actually biased.　The district attorney was afforded
full opportunity upon the hearing of the motion to state the grounds
of challenge and to file affidavits in support thereof.　The court, after
due consideration of the district attorney's statements and the affi-
davits which he has filed, finds nothing therein to justify the changing
of its ruling made upon the hearing of the motion that it is not biased.
The court deems itself without power to direct that this motion be
heard by another justice, and holds mandatory the law directing ap-
plications for certificates of reasonable doubt to be made to a regu-
larly appointed Special Term of the Supreme Court.　The court's views
on this question, having been expressed in a memorandum previously
handed down, need not be repeated.

[1, 2] The contention on which defendant chiefly relies in support
of his application in substance is that upon the trial the court in ef-
fect changed the indictment, so that it would apply to a different affi-

davit than the one upon which the grand jury based the indictment; in other words, that defendant was indicted upon one affidavit and convicted upon another. If the record supports defendant's contention that such change in the indictment was made by the trial court, beyond question the judgment of conviction was obtained without due process of law, as prescribed by the Constitution of New York state, and is void. The Constitution of this state provides that:

"No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury." Article 1, § 6.

The force and effect of such constitutional provision, as applied to the question now under consideration, has frequently been the subject of judicial comment. In Ex parte Bain, 121 U. S. 1, 5, 10, 13, 7 Sup. Ct. 781, 784, 786, 787 (30 L. Ed. 849), Justice Miller says:

"The proposition, that in the courts of the United States any part of the body of an indictment can be amended after it has been found and presented by a grand jury, either by order of the court or on the request of the prosecuting attorney, without being resubmitted to them for their approval, is one requiring serious consideration. Whatever judicial precedents there may have been for such action in other courts we are at once confronted with the fifth of those articles of amendment, adopted early after the Constitution itself was formed, and which was manifestly intended mainly for the security of personal rights. This article begins its enumeration of these rights by declaring that 'no person shall be held to answer for a capital, or otherwise infamous, crime, unless on a presentment or indictment of a grand jury,' except in a class of cases of which this is not one. * * *"

Justice Miller further says:

"If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer' may be frittered away until its value is almost destroyed."

The court further says:

"The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists."

The rule laid down by the United States Supreme Court in the above case in reference to the amendment of indictments is somewhat stricter than that which is followed by the courts of this state, in that it seems to forbid any amendment of the body or charging part of the indictment. The language of the provisions of the New York Constitution requiring indictment by a grand jury, however, is the same as that used in the United States Constitution, and the rules followed in the

New York and federal courts, respectively, notwithstanding their variation, are in principle the same. The New York Code of Criminal Procedure provides as follows:

"Upon the trial of an indictment when a variance between the allegation therein and the proof, in respect to time, or in the name or description of any place, person or thing shall appear the court may in its judgment if the defendant cannot be thereby prejudiced in his defense on the merits, direct the indictment to be amended, according to the proof, on such terms as to the postponement of the trial, to be had before the same or another jury, as the court may deem reasonable." Section 293.

The statute by its terms only authorizes an amendment of the indictment in the description of the offense. An amendment in the identity of the offense is not permissible. People v. Geyer, 196 N. Y. 364, 90 N. E. 48; People v. Bromwich, 200 N. Y. 385, 93 N. E. 933; People v. Poucher, 30 Hun, 576, appeal dismissed 99 N. Y. 610, 1 N. E. 151. Such an amendment would substantially change the bill found by the grand jury, and would be violative of the Constitution requiring indictment by that body. People v. Motello, 157 App. Div. 510, 142 N. Y. Supp. 622; Matter of Bain, supra. A trial judge, without violating the Constitution, cannot amend an indictment, or by ruling in effect amend it, so as to place the defendant upon trial for a different crime from that found by the grand jury. There is no room for discussion of this proposition; the law is plain.

The learned trial court in this case, by its rulings, in effect did amend the indictment so as to place defendant upon trial for a different crime than that set forth in the indictment, and tried him for an offense for which he had not been indicted by a grand jury. The indictment charged defendant with perjury. The act by which such crime is committed is an oath. The indictment specifies or identifies the oath which defendant is charged with having made as follows:

"After the said report was made as aforesaid, the defendant, on April 2, 1910, in the county of Kings, signed a written statement and affidavit attached thereto and duly swore to the same, as required by law, before W. C. Penton, a notary public duly appointed, qualified, and acting as such in and for Kings county, which statement and affidavit contained the allegation that the said report was true and correct in all respects, to the best of his (defendant's) knowledge and belief."

It is to be noted that the oath referred to in the above quoted allegation of the indictment is specified to be a written statement and affidavit *"attached"* to the report to which prior allegations of the indictment related. Upon the trial the people introduced in evidence two documents. One of these documents was entitled, "Quarterly Report of the Union Bank of Brooklyn at the Close of Business on the 25th day of March, 1910," and was marked in evidence as "People's Exhibit 22." The other was entitled, "Report of the Condition of the Union Bank of Brooklyn at the Close of Business on the 25th day of March, 1910," and was marked in evidence as "People's Exhibit 23." To each of these documents was *"attached"* a written statement and affidavit, each purporting to be signed by defendant and to be sworn to by him on April 2, 1910, before W. C. Penton, notary public, and each affidavit contained the allegation that the report to

which it was respectively attached was true and correct in all respects, to the best of defendant's knowledge and belief. There was nothing in the allegation of the indictment above quoted by which it could be determined on which of these two affidavits the grand jury based the indictment, save by the prior allegations of the indictment indicating some feature contained in one report and not in the other, by which could be identified the report intended as the basis of the indictment. In other words, the affidavit intended by the grand jury can only be identified by the allegations which identified the report to which the affidavit was alleged to be attached. It appears from inspection of these two documents, and from other evidence in the record, that the "Report of the Condition" was published by the bank in a newspaper and that the "Quarterly Report" was not published. Both reports are made out on printed blanks furnished by the superintendent of banks. Many of the items are alike in both reports, and the figures, in so far as repeated, are the same. The two reports, however, are not identical, nor are the two affidavits.

In view of the allegations of the indictment, one difference between the reports should be specially pointed out. In the "Report of the Condition," between the printed words "Bills payable" and the figures opposite them, "$1,562,885.81," are inserted the words "not maturing until December next." The allegations of the indictment clearly refer to the "Report of the Condition," and not to the "Quarterly Report." It follows that the affidavit "attached" to the former report, and not the one "attached" to the latter report, is the basis of the indictment. The principal allegations of the indictment upon which this conclusion is based are as follows:

"On April 2, 1910, the said bank and the defendant, and said Ashley as such president and cashier, respectively and for and on behalf of said bank, made, *published*, and transmitted to the said superintendent of banks, and caused to be received by him, as and for the *report showing the pecuniary condition of said bank on March 25, 1910*, at the close of business on that day, *a certain* written report and statement signed by them, then and there purporting to be the report and statement of the said bank so required by law as aforesaid, and *published* as such, and to be such report in the form and containing such matters as had been so prescribed by the said superintendent of banks, and to be and contain a true *statement of the pecuniary condition of the said bank on March 25, 1910*, at the close of business on that day, *in and by which said report and statement it was then and there made to appear and the items and entries whereof then and there purported to indicate and set forth, and did in substance and effect then and there state, signify*, and declare, among other things, * * * that the said bank had a total liability on bills payable amounting to one million five hundred sixty-two thousand eight hundred eighty-five dollars and eighty-one cents, and *that the said total of bills payable did not mature or become due till the month of December, 1910*. * * * After the *said report* was made as aforesaid, the defendant on April 2, 1910, in the county of Kings, signed a written statement and affidavit *attached thereto*, and duly sworn to the same, as required by law, before W. C. Penton, a notary public duly appointed, qualified, and acting as such in and for Kings county, which statement and affidavit contained the allegation that the said report was true and correct in all respects to the best of his (defendant's) knowledge and belief. The said report and statement was not true and correct and was false and untrue in the following particulars: * * * *All of said bank's bills payable included in said statement as liabilities* and amounting to one million five hundred sixty-two thousand eight hundred eighty-five dollars and eighty-one cents *did mature*

*before the month of December, 1910,* and matured and were due and payable as follows. * * * "

The indictment then sets forth a long list of bills payable, alleging them to have become due and payable in June, 1910. The indictment further alleges:

"*The said report and statement* was known by the defendant to be false and untrue at the time he made the same and at the time he signed and swore to the *said affidavit thereto attached,* and the defendant then knew that the said report was not true and correct in all respects to the best of his knowledge and belief, and he willfully and knowingly *swore falsely in the said affidavit that the said report* was true and correct in all respects to the best of his knowledge and belief, and the defendant knew at the time he made *said report* and signed and swore to the *said affidavit* * * * *that the bills payable,* amounting to one million five hundred sixty-two thousand eight hundred eighty-five dollars and eighty-one cents, and carried as a liability in said report and statement, *did mature and become due and payable before the month of December, 1910,* and that they matured and became due and payable at the times and in the manner, respectively, as hereinbefore set forth."

Nowhere in the indictment is the report referred to as the "Quarterly Report," the title of Exhibit 22; but the report is referred to as "the report showing the pecuniary condition of said bank on March 25, 1910," approximating the title of Exhibit 23, "Report of the Condition of the Union Bank of Brooklyn at the Close of Business on March 25, 1910." The indictment also repeatedly states that the report was *published.* The "Report of the Condition" was published; the "Quarterly Report" was not. But what especially indicates that the report mentioned in the indictment is the "Report of the Condition," and not the "Quarterly Report," is the fact that the indictment in assigning perjury makes a special feature of the statement which appears only in the "Report of the Condition," namely, that bills payable did not mature until December, 1910. Not only did defendant's counsel upon the trial insist that the indictment referred to the "Report of the Condition" and not to the "Quarterly Report," but the district attorney who drew the indictment also claimed that it so did in unmistakable language. The learned court, however, in effect ruled that the allegations in the indictment based upon the words "not maturing until December next," which appeared only in the "Report of the Condition" were surplusage, and that Exhibit 23 was not the basis of the indictment, but that the "Quarterly Report" was the basis of it; and the learned court so instructed the jury in the charge.

Summarizing what has gone before, the evidence disclosed two papers purporting to be affidavits made by the defendant on the same day, before the same notary, and, so far as the allegations of the indictment indicated, of the same tenor. The indictment charged perjury in the making of one affidavit only; it was therefore incumbent on the trial court to determine which of the two affidavits was the one intended by the grand jury as the basis of the indictment. The intention of the grand jury must be determined from the allegations of the indictment. The indictment alleged that the affidavit on which the charge of perjury was predicated was "attached" to the report which the indictment recited contained certain statements. Among the

statements alleged was one which was contained only in the "Report of the Condition." The allegations of the indictment in reference to this statement were material, in that they identified the report and the affidavit which was attached thereto as the report and affidavit upon which the indictment was based. The learned trial judge, however, after reaching and expressing the conclusion that it was questionable as a matter of law whether a charge of perjury could be predicated on the affidavit attached to the "Report of the Condition," and that such charge could only be properly predicated on the affidavit attached to the "Quarterly Report," ruled in effect that the allegations of the indictment which identified the "Report of the Condition" and the affidavit as the report and affidavit intended by the grand jury as the basis of the indictment should be stricken out and disregarded as surplusage, and further held that the "Quarterly Report" and the affidavit thereto attached were the basis of the indictment. Thus the learned court held to be surplusage the material statement in the indictment which specifically identified as the basis of the alleged crime the affidavit attached to the "Report of the Condition," and, reading the indictment without regard to that identifying statement, in effect amended it to make it fit as the basis of the alleged crime the affidavit attached to the "Quarterly Report."

The court was without power to substitute one act for another as the basis of the indictment. Had there been but one affidavit before the grand jury and the court, viz., the affidavit attached to the "Quarterly Report," the amendment might have been proper; but it was never intended that, under pretext of amending the description of a crime charged in one indictment, a new crime should be substituted for the old. There is no power in a trial judge to indict. Yet that is what happened here. The defendant was indicted for perjury in swearing to the affidavit attached to the "Report of the Condition of the Union Bank" and was tried and convicted of perjury, without an indictment by the grand jury, in swearing to the affidavit attached to the "Quarterly Report of the Union Bank," a different, separate, and distinct paper. The indictment upon which defendant was brought to trial alleged no crime, if the views expressed by the learned trial judge are correct, because it alleged no falsity in any oath required by law. The defendant was tried and convicted of a crime for which he had not been indicted, and for which, without indictment, legally he could not be brought to trial. The motion upon the trial to dismiss the indictment should have been granted. All proceedings had subsequently thereto were illegal and void in my opinion.

I have gone over the entire record in this case. The defendant points out several assignments of error which are of weight and substance, and upon any one of which a certificate of reasonable doubt would have to be granted; but as the illegality which I have discussed is fundamental, going to the very root of the matter and making the defendant's trial a nullity, I deem it unnecessary to consider the errors in a void trial.

The motion herein for a certificate of reasonable doubt is granted; bail to be fixed upon notice to the district attorney.

Motion granted.