## BREINIG v STATE

Ohio Appeals, 4th Dist, Scioto Co
Decided Dec. 16, 1930

A. R. Johnson, Ironton, Blair & Bell, Portsmouth, and George D. Nye, Waverly, for Breinig.

D. W. Gustin and Emory Smith, both of Portsmouth, and J. A. Godown, Columbus, for State.

CUSHING, J (1st Dist) sitting in place of MIDDLETON, J.

MAUCK, J.

Inasmuch as Breinig was an employe and not an officer it is obvious that it would have been more accurate to have pleaded that the money came into his possession under color of his said employment. The discrepancy is, however, not important and it is clear that no prejudice occurred to Breinig on that account.

In this connection it may also be observed that complaint is made that the trial court submitted to the jury the question of whether Breinig was or was not an employe of the state. We think that under the evidence the court might well have charged the jury that he admitted that he was such employe. But certainly no prejudice to him resulted from submitting that question to the jury.

It is further contended that the evidence tended to show that the defendant was guilty of fraud in obtaining the money and checks from the state and that there was no crime of embezzlement. The testimony tended to show that Breinig as Superintendent of Maintenance and Repair of State Highways would submit to his superiors a list of names of supposed laborers with the amounts due them, and that checks would be issued payable to these several laborers for the amounts apparently due them, when as a matter of fact there were no such laborers and consequently no such sums due anyone; that these checks were cashed by Breinig, who kept the proceeds. It is quite possible that these facts would support a charge of obtaining money under false pretenses. But the fact that false pretenses were resorted to in order to get possession of the money would not relieve the accused from a charge of embezzlement. If Breinig endorsed checks payable to non-existent payees and received the money therefrom it was the state's money, and even though he used fraud to gain possession of the money it nevertheless came to his possession by virtue of his

employment and but for the fact that he was an employee he could not have come into the possession of the money. It could have been the money of no one else, and regardless of what ruses he adopted to get possession of it if he converted it to his own use he was thereby guilty of embezzlement.

Numerous questions are raised in regard to the competency of testimony, particularly the clearly argumentative testimony of an expert witness of the state who testified in relation to the handwriting of the accused. We say that this testimony was clearly argumentative, but is was necessarily so. Whenever an expert is called upon to give his reasons for his opinion he is required to apply logic to conceded facts in an effort to show the soundness of derived facts, and much must be left to the sound discretion of the trial judge in the acceptance of testimony of this character. We are content to say that neither the questions raised in this respect nor any other questions of evidence are serious enough to warrant a reversal of the judgment.

The question of greatest difficulty proceeds from the failure of the indictment to adequately set forth the venue of the offense. While the caption of the indictment contains the words "Ohio" and "Scioto County" and recites that the grand jurors were of that county, and described the accused as being of that county and refers to the title given his position as relating to Scioto County, it does not charge in express terms that the offense was committed in Scioto County. The indictment was demurred to and the demurrer was overruled. During the progress of the trial the specific question was raised that no venue was laid in the indictment, whereupon the trial court ordered an amendment to the indictment, inserting therein the words "at the County of Scioto aforesaid". Until the amendment was made the indictment was clearly insufficient. It was practically identical with the indictment condemned in **Knight v. State, 54 Oh St 365.** We are confronted, therefore, with the serious question whether an indictment can be so amended as to supply this averment.

It has long been held that in the absence of an enabling statute an indictment can not be amended at all, **Ex parte Bain, 121 U. S. 1,** and one rule is that a statute may not authorize an amendment where the indictment without the amendment is subject to demurrer. Most of the statutes authorize amendments as to form and not as to substance, and while the authorities upon the question are meager the few that touch the precise question indicate that venue is a matter of substance. See notes to **Dodge v. United States, 7 A. L. R. 1516,** and **Commonwealth v. Snow, 68 A. L. R. 928.**

The power to amend indictments in this state proceeds from 13437-29 GC (113 O. L. 169). This new feature of the criminal procedure of this state is due to a learned and disinterested committee which gave careful consideration to the technical and archaic code of criminal procedure in this state with a view of so liberalizing such procedure as to make the trial of criminal cases dependent more upon the merits of the case and less upon artificial technicalities. This statute undertakes to authorize an amendment to an indictment.

"in respect to any defect, imperfection or omission in form or substance *** provided no change is made in the name or identity of the crime charged."

We have found no statute in any state of broader import than this in permitting amendments. Its only limitation is that the amendment shall work no change in the name or identity of the crime charged. This statute by its terms authorized the amendment made. The accused was charged with embezzlement by the unamended indictment and was charged with the same offense after the amendment was made. The only question, therefore, is whether or not the statute itself violates any provision of the Constitution of Ohio.

The pertinent provisions of the **Constitution** are found in **Section 10, Article I,** to the effect that no person shall be held to answer for an infamous crime unless on presentment or information of a grand jury. The argument is that as the accused must be indicted by a grand jury before he is placed on trial, and as the word indictment is not otherwise defined, a common law indictment must have been contemplated and that a pretended indictment lacking any of the requirements of the common law, including venue, is not an indictment at all. This argument is artificial. The section referred to gives the accused the right to know "the nature and cause of the accusation against him", and that is as far as the constitution goes in fixing the substance of the indictment itself. What we take to have been the purpose of those placing in our constitution the language quoted was to preserve the grand jury as one of the institutions of the

state. The real need was felt that one should not be subjected to trial for an infamous crime by the arbitrary action of a prosecuting officer; that he should not be put to the cost and labor incident to a defense and that his good name should not be impaired and the peace of mind of himself and his friends and family should not be destroyed until a competenet grand jury, acting upon oath, had found that there was such likelihood of his guilt as to justify his prosecution. This was the right that the constitution sought to preserve. To do so it did not even retain the common law grand jury which required not less than twelve nor more than twenty-three members, of whom twelve must concur to indict, but left to the legislature the power to determine both the number to sit and the number to concur in a finding. Instead, therefore, of our constitution saving a right to a common law grand jury it only saved the right to a statutory grand jury with powers of a common law nature, and instead of requiring a common law indictment required only an indictment that would apprise the accused of the nature and cause of the complaint against him.

The Supreme Court of the United States, tracing our bill of rights back to its origin in Magna Charta, said in **Hurtado v. California, 110 U. S. 516:**

> "There is nothing in Magna Charta, rightly construed as a broad charter of public right and law, which ought to exclude the best ideas of all systems and of every age; and as it was the characteristic principle of the common law to draw its inspiration from every fountain of justice, we are not to assume that the sources of its supply have been exhausted. On the contrary, we should expect that the new and various experiences of our situation and system will mold and shape it into new and not less useful forms."

In the same opinion the court called attention to the fact that in England the function of the bill of rights was to protect the individual from oppression by the Crown, while in this country it is employed as well to defeat the purposes of the people as expressed in legislation. This difference led to the following pertinent observation:

> "Restraints that would be fastened upon executive authority with precision and detail might prove obstructive and injurious when imposed on the just and necessary discretion of legislative pow-

er; and while in every instance laws that violate express and specific injunctions and prohibitions might without embarrassment be judicially declared to be void, yet any general principle or maxim, founded on the essential nature of a law as a just and reasonable expression of the public will and government, as instituted by the popular consent and for the general good, can only be applied to cases coming clearly within the scope of its spirit and purpose, and not to legislative provisions merely establishing forms and modes of attainment."

The attitude of the Supreme Court of this state is in keeping with the doctrine just referred to. The power of the legislature to prescribe the sufficiency of indictments was considered by the Supreme Court in an early case under the Constitution of 1802, which was somewhat less liberal than the like provisions of the present constitution. The general assembly had defined a crime and declared what allegations in an indictment would be sufficient. The court was manifestly out of sympathy with the innovation and found that the indictment tested by ordinary legal rules, which we take to be the rules of the common law, was insufficient. It held, however, that the legislation was constitutional and the indictment valid, saying:

> "The legislature have the power to declare what acts are criminal; and they have the same power to prescirbe the forms of indictments for the commission of such criminal acts. They can not dispense with the indictment itself but they can dispense with some of its technical formalities."

**Longee v. State, 11 Ohio 68.**

A like constitutional question was raised in **Wolf v. State, 19 Oh St 248,** and a like disposition was made of the question, the court saying that the constitution was satisfied with an indictment and that

> "An indictment, then, within the meaning of the constitution is nothing more than what it is defined to be by Blackstone (4 Comm. 302)—'A written accusation of one or more persons of a crime or misdemeanor; preferred and presented by a grand jury upon oath'."

What rights, concretely expressed, did the constitution confer upon the accused as a condition precedent to his being placed on trial? He had the right to have his case first investigated in secrecy by a grand jury acting upon oath. This right was granted,

him. He had the further right to have the charge against him reduced to writing by the grand jury. This was done. He had the right to know from the written charge the nature and cause of the accusation. This he had because the nature and cause of the accusation was such as is defined as embezzlement by 12876 GC.

While venue was not laid in this indictment it seems apparent that the constitution does not require that it be so laid. The constitution, as we have pointed out, only requires that the nature and cause of the complaint, and not the place, be included in the indictment. The reason for this is that the protection which the constitution was seeking to give to citizens was from being placed upon trial by the arbitrary action of public officials and the subjection of citizens to the resultant expense and disgrace where such accusation was groundless. Manifestly, one is as much disgraced and as much harrassed by an unwarranted prosecution for an offense charged to be in one county as in another. The shame of the accusation attaches from the nature of the conduct attributed to the accused and the moral qualities that are involved in the case charged. Whether the offense charged is in one county or another is immaterial.

Venue, however, has its important, even its vital place in a criminal proceeding. The constitutional requirement in that behalf is, however, only that the accused shall have a trial "by a jury of the county in which the offense is alleged to have been committed". And, of course, the accused in this case had such jury. If venue is by the constitution a requirement in an indictment then venue is so defined and fixed as to be beyond the power of a legislature to affect. To so hold would be at once a determination that the various statutes attempting to fix venue are unconstitutional. That has not been the attitude of our Supreme Court. **Norman v. State, 109 Oh St 213, Strawboard Co. v. State, 70 Oh St 140.** In the Strawboard case, discussing what was then **6920 R. S.**, now **12659 GC**, defining the venue in a case of nuisance, it was said:

> "But if it should be admitted that Section 6920, Revised Statutes, changes the rule of the common law as to jurisdiction, yet we think that such enactment would be, and was, but the exercise of a legitimate legislative power, and is therefore constitutional. The sovereign right of a state to enact

jurisdictional laws of this kind, though often questioned, has been generally, if not uniformily, sustained; and we have found no case where statutes of this character when subjected to judicial interpretation have been held or declared to be unconstitutional."

It follows that the statute, so far as it permits an amendment to an indictment fixing the venue of an offense already sufficiently described, violates no provision of the constitution.

There being no error in the record prejudicial to the plaintiff in error the judgment is affirmed.

Blosser and Cushing, JJ, concur.