THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL MENDEZ, Appellant.

First Department, July 13, 1978

### APPEARANCES OF COUNSEL

*Clarence Fried* of counsel *(Rafael Pastor* with him on the brief; *Hawkins, Delafield & Wood,* attorneys), for appellant.

*Mark Dwyer* of counsel *(Robert M. Pitler* and *Gregory Motyka* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

Defendant appeals from a judgment of the Supreme Court convicting him, after jury trial, of assault in the second degree

(Penal Law, § 120.05) and sentencing him to an indeterminate term of imprisonment with a maximum of seven years.

Two points are raised by appellant on appeal: An alleged improper reduction by the court of the indictment from murder to assault in the second degree, and a deprivation of his right to a speedy trial. We think that there was no error in the reduction of the charge in the indictment and that therefore, except for the issue of speedy trial discussed below, defendant was properly convicted of assault in the second degree.

I. Defendant was arrested on December 21, 1971 in connection with the brutal beating of the victim that day. On March 1, 1972, defendant was indicted for assault in the second degree and attempted murder. On October 29, 1972 the victim died. Thereupon, on December 1, 1972 defendant was indicted for murder. Six months later the first indictment which had charged assault in the second degree and attempted murder was dismissed.

On September 19, 1974 defendant made an omnibus motion, which apparently included a motion to dismiss the second indictment pursuant to CPL 210.20 (subd 1, par [b]) on the ground that the evidence before the Grand Jury was not legally sufficient to establish a charge of murder because of failure to show a causal relation between defendant's alleged assault and the death of the victim 10 months later. No formal action appears to have been taken with respect to that motion until September 30, 1975, the day before the suppression hearing which immediately preceded the trial. On that date, the District Attorney conceded that the evidence was insufficient to sustain the charge of murder for the reason that, although the death certificate received in evidence before the Grand Jury did list the cause of death as "traumatic subdural hemorrhage", which was apparently suffered in the course of the assault, the medical examiner, who had issued the certificate, had told the trial Assistant District Attorney, during conversations and preparation for the trial, that the medical examiner could not establish beyond a reasonable doubt that the death was a direct result of the assault. (Apparently the trial Assistant District Attorney had informed the court of this fact.) However, the District Attorney contended that the indictment should not be dismissed because it was sufficient to sustain a charge of assault in the second degree. And accordingly, the District Attorney asked to

reduce the charge to assault in the second degree, as a lesser included offense. The court, over objection by defense counsel, stated that it granted the motion "to reduce, so to speak" and instructed that no reference should be made to the murder charge either in court or on the clerk's calendar. After a jury trial, defendant was convicted of the highest crime submitted, assault in the second degree.

We do not think the court's action in "reducing" the charge to assault in the second degree was improper or that it requires reversal of the conviction. Basic to our position is the proposition that assault in the second degree is a lesser included offense of murder, particularly on this indictment. The indictment charges the defendants (there was a codefendant) with "the crime of MURDER, committed as follows: The defendants, in the County of New York, on or about December 21, 1971 with intent to cause the death of John Costello caused the death of John Costello by striking him with their fists and feet and thereby inflicted divers wounds upon him and thereafter and on or about October 29, 1972 said John Costello died of said wounds." This charge of murder necessarily includes a charge of assault in the second degree as a lesser included offense as defined in CPL 1.20 (subd 37). "[I]t is impossible to commit" the crime of murder as described in this indictment "without concomitantly committing, by the same conduct" (CPL 1.20, subd 37), the crime of assault in the second degree, i.e., intentionally causing serious physical injury to the victim (Penal Law, § 120.05, subd 1). The charge that on December 21, 1971 with intent to cause the victim's death, the defendant intentionally caused the victim's death by striking the victim and inflicting on him wounds from which the victim died 10 months later necessarily includes a charge that on December 21, 1971 defendant intentionally caused serious physical injury to the victim, i.e., "physical injury which creates a substantial risk of death, or which causes death" (Penal Law, § 10.00, subd 10).

Assault in the second degree being a lesser included offense with respect to the charge of murder in the indictment, what was the proper course for the trial court to take on the District Attorney's concession that the evidence would be insufficient to prove or warrant a charge of murder but was and would be sufficient to sustain a charge of assault in the second degree? Clearly the court could not grant defendant's motion to dismiss the indictment, as that could only be done if

the evidence before the Grand Jury was insufficient to establish the offense charged "or any lesser included offense" (CPL 210.20, subd 1, par [b]).

If the court merely denied the motion to dismiss, then the trial would have begun on the indictment charging murder, but the court would still have been required to submit only "the greatest lesser included offense which is supported by legally sufficient trial evidence" (CPL 300.30, subd 1), i.e., assault in the second degree; and the court would have been required to inform the parties of that fact at some time prior to summation (CPL 300.10, subd 3). This procedure is presumably what we would have to direct if we were to hold that what the Trial Judge did was error (cf. *People v Motello,* 157 App Div 510, 512).

But this procedure does not differ materially from what the trial court did in this case, except that the trial court avoided the gross injustice of permitting the trial to proceed on a charge of murder, with the trial jury thus being informed that the Grand Jury had charged that the defendant caused the death of the victim, and without telling the jury until some later point that there was no legally sufficient evidence that the defendant had caused the death of the victim.

Instead of this unjust procedure, the court followed the eminently sensible and just procedure of anticipating by a few days the announcement that it was required to make, that it would only submit the charge of assault in the second degree, and told the lawyers before the jury was selected that the highest offense that the court would submit would be assault in the second degree and instructed the parties that the charge of murder would not be referred to.

We note that what the court did did not really amount to an "amendment" of the indictment. The court did not change one word of the factual allegations contained in the indictment. It merely changed the name of the crime charged from murder to assault in the second degree. It was long ago said: "An indictment must contain 'a plain and concise statement of the *act* constituting the crime without unnecessary repetition' (Code Crim. Proc. § 275) [cf. CPL 200.50, subd 7], and it is of no moment if the *name* of the crime be incorrectly stated in the accusatory clause of the indictment if the specific allegations of fact are sufficient, for the latter in such case control the character of the crimes presented by the indictment * * * The purpose of requiring the acts to be set forth in the

indictment is that the accused may know what he is called upon to meet, and if no more is proved against him than is so charged, even if all be not proven, and the acts which are proved constitute a lesser crime than that for which he was indicted, no injustice is done if he be convicted of the lesser charge." *(People v Miller,* 143 App Div 251, 256, affd on opn of App Div 202 NY 618.)

*People v Hooter* (282 App Div 398) and *People v Kuehn* (5 AD2d 516) both reached results different from what we have suggested. At the time those cases were decided, the governing procedural statute was the Code of Criminal Procedure which differed somewhat from the present CPL, in particular with respect to the form of indictments and the absence of any provision like CPL 210.20 (subd 1, par [b]) making explicit that indictments are not to be dismissed if the evidence before the Grand Jury is sufficient to sustain a lesser included offense. To the extent that the reasoning of those cases is inconsistent with what we have said, we must respectfully disagree with them.

II. However, there is a very serious question as to the denial of defendant's right to a speedy trial. There was a delay in excess of three and one-half years between the commencement of the criminal action and the trial, and defendant timely sought speedy trial relief *pro se.* While the briefs of both parties indicate that much of the delay may be attributable to defendant's attorney, the court should have before it a record as to the causes of and responsibility for the delays in a case where there has been delay as extensive as this. Accordingly, we remand for a hearing on this issue and hold the appeal in abeyance.

The appeal from the judgment of the Supreme Court, New York County (McQuillan, J.), entered December 4, 1975, convicting defendant of assault in the second degree and sentencing him thereon should be held in abeyance pending a hearing which should be directed to be held in the Supreme Court to determine whether there has been a denial of defendant's right to a speedy trial.

Evans, J. (dissenting). Defendant and his brother were indicted for attempted murder and assault, second degree, in March, 1972, after beating the superintendent of their building. The victim died in October, 1972, and on December 1, 1972, an indictment charging them with murder, second degree, was forthcoming and the first indictment was dismissed

as a result of the new indictment. On September 30, 1975, the People said that they had introduced insufficient evidence to the Grand Jury to establish that the assault was the cause of the victim's death, and moved to have the indictment amended. The court granted the motion and substituted the charge of assault, second degree, for which the defendant was tried, convicted and sentenced. In so doing, the trial court, in effect, wrote a new indictment. Section 6 of article I of the New York State Constitution provides in pertinent part that "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury". The importance of this requirement is best expressed in the seminal case *Matter of Bain* (121 US 1, 10): "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." In *United States v Pandilidis* (524 F2d 644, 647) the court said: "This rule, constitutional in origin, has developed within the context of the Fifth Amendment, which protects an accused from prosecution for high crimes except upon charges filed by a grand jury. In both *Stirone* and *Bain,* the Supreme Court concluded that effectuation of the Fifth Amendment protections required the preclusion of substantial variations in an indictment unless approved by a grand jury. 'Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney . . . .' *Ex parte Bain, supra* at 13, 7 S.Ct. at 787."

The court has mentioned "substantial variations", and our own CPL 200.70 permits amendment of an indictment if it does not change the theory of prosecution as reflected in the evidence before the Grand Jury which filed the indictment and permits amendment to correct "defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like", which are not the "substantial variations" contemplated by the court in *Pandilidis.* If we were to countenance such variations, by way of *reductio ad*

*absurdum,* the court might have been impelled to "amend" the first indictment for attempted murder to murder without recourse to the Grand Jury.

Just as CPL 200.70 permits amendment of an indictment so does 210.20 (subd 1) permit dismissal of an indictment where "(b) [t]he evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense". Considered together it is difficult to see how 210.20 (subd 1, par [b]) can be tortured, by its reference to lesser included offenses, into a grant of permission to write a new indictment.

It would appear that the section is meant to supply criteria for the dismissal of an indictment and for no other purpose.

The People conceded that the evidence presented to the Grand Jury was not sufficient to show a causal relationship between the defendant's assault and the victim's death. Acting upon this extrajudicial representation, the court saw fit to determine, that although the murder count would not lie, the lesser included offense of assault would. Inasmuch as the question of "causal relationship" is a question more properly for the jury than for the Assistant District Attorney, it flies in the face of logic to base the court's action on the People's mere representation of insufficiency of evidence. We must remain aware that there exists a recognizable distinction between submitting a lesser included offense in the alternative to the jury after a trial with the benefit of an overview of the evidence with the technical limitations imposed thereon by our rules of evidence, and dismissing before trial a charge in the indictment (on an unsworn representation) and replacing it with another charge (even if it is a lesser offense), especially while the opportunity exists to seek a superseding indictment.

Further, since the evidence before the Grand Jury was insufficient to establish a causative link between the alleged assault and the victim's death, the question arises as to whether the evidence was then sufficient to establish a causative link between the alleged assault and the "serious physical injury" necessary for a charge of assault, second degree (Penal Law, § 120.05). And we must be mindful here that without adequate evidence other than unsworn representations, the court deemed the evidence sufficient to support the lower charge, and attempted to justify it by saying that it was permissible since one of the charges in the dismissed first indictment had been assault second degree.

If we were not voting to reverse for the reasons hereinbefore stated, we would join the majority position holding this matter in abeyance pending a "speedy trial" hearing.

Judgment, Supreme Court, New York County (McQUILLAN, J., and a jury), rendered December 4, 1975, convicting defendant of assault in the second degree, should be reversed on the law and the facts and the indictment dismissed.

LANE and MARKEWICH, JJ., concur with SILVERMAN, J.; MURPHY, P. J., and EVANS, J., dissent in an opinion by EVANS, J.

Appeal from judgment, Supreme Court, New York County, rendered on December 4, 1975, held in abeyance pending a hearing which is directed to be held in the Supreme Court to determine whether there has been a denial of defendant's right to a speedy trial.