## EX PARTE BAIN.

ORIGINAL.

Argued March 8, 1887. — Decided March 28, 1887.

The declaration of Article V of the Amendments to the Constitution, that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," is jurisdictional, and no court of the United States has authority to try a prisoner without indictment or presentment in such cases.

The indictment here referred to is the presentation to the proper court, under oath, by a grand jury, duly impanelled, of a charge describing an offence against the law for which the party charged may be punished.

When this indictment is filed with the court no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without a re-submission of the case to the grand jury. And the fact that the court may deem the change immaterial, as striking out of surplus words, makes no difference. The instrument, as thus changed, is no longer the indictment of the grand jury which presented it.

This was the doctrine of the English courts under the common law. It is the uniform ruling of the American courts, except where statutes prescribe a different rule, and it is the imperative requirement of the provision of the Constitution above recited, which would be of little avail if an indictment once found can be changed by the prosecuting officer, with consent of the court, to conform to their views of the necessity of the case.

Upon an indictment so changed the court can proceed no farther. There is nothing (in the language of the Constitution) which the prisoner can "be held to answer." A trial on such indictment is void. There is nothing to try.

VOL. CXXI—1

According to principles long settled in this court the prisoner, who stands sentenced to the penitentiary on such trial, is entitled to his discharge by writ of *habeas corpus.*

THIS was a petition for a writ of *habeas corpus.* The case is stated in the opinion of the court.

*Mr. Richard Walke* and *Mr. W. W. Crump* for the petitioner. *Mr. L. R. Page* was with them on the brief.

*Mr. Attorney General* and *Mr. John Catlett Gibson,* District Attorney for the Eastern District of Virginia, opposing.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an application to this court for a writ of *habeas corpus* to relieve the petitioner, George M. Bain, Jr., from the custody of Thomas W. Scott, United States Marshal for the Eastern District of Virginia. The original petition set out with particularity proceedings in the Circuit Court of the United States for that district, in which the petitioner was convicted, under § 5209 of the Revised Statutes, of having made a false report or statement as cashier of the Exchange National Bank of Norfolk, Virginia. The petition has annexed to it as an exhibit all the proceedings, so far as they are necessary in the case, from the order for the impanelling of a grand jury to the final judgment of the court, sentencing the prisoner to imprisonment for five years in the Albany penitentiary. Upon this application the court directed a rule to be served upon the marshal to show cause why the writ should not issue, to which that officer made the following return :

"Comes the said Scott, as marshal aforesaid, and states that there is no sufficient showing made by the said Bain that he is illegally held and confined in custody of respondent; but, on the contrary, his confinement is under the judgment and sentence of a court having competent jurisdiction to indict and try him, and he should not be released ; and respondent prays the judgment of this court, that the rule entered herein against him be discharged, and the prayer of the petition be denied."

The Attorney General of the United States and the District

Attorney for the Eastern District of Virginia appeared in opposition to the motion, and thus the merits of the case were fully presented upon the application for the issue of the writ.

Upon principles which may be considered to be well settled in this court, it can have no right to issue this writ as a means of reviewing the judgment of the Circuit Court, simply upon the ground of error in its proceedings; but if it shall appear that the court had no jurisdiction to render the judgment which it gave, and under which the petitioner is held a prisoner, it is within the power and it will be the duty of this court to order his discharge. The jurisdiction of that court is denied in this case upon two principal grounds; the first of these relates to matters connected with the impanelling of the grand jury and its competency to find the indictment under which the petitioner was convicted; the second refers to a change made in the indictment, after it was found, by striking out some words in it, and then proceeding to try the prisoner upon the indictment as thus changed. We will proceed to examine the latter ground first.

Section 5209 of the Revised Statutes of the United States, under which this indictment is found, reads as follows:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

Section 5211 requires every banking association organized under this act of Congress to "make to the Comptroller of the Currency not less than five reports during each year, . . . verified by the oath or affirmation of the president or cashier of such association, and attested by the signatures of at least three of the directors."

The indictment in this case, which contains but a single count, and is very long, sets out one of these reports, made on the 17th day of March, 1885, by the petitioner, as cashier, and Charles E. Jenkins, John B. Whitehead, and Orlando Windsor, as directors, of the Exchange National Bank of Norfolk, a national banking association. The indictment also points out numerous false statements in this report, which, it is alleged in the early part of it, were made " with intent to injure and defraud the said association and other companies, bodies politic and corporate, and individual persons to the jurors aforesaid unknown, and with the intent then and there to deceive any agent appointed by the Comptroller of the Currency to examine the affairs of said association." Following this allegation come the specifications of the particulars in which the report is false, and the concluding part charges that the defendants, " and each of them, did then and there well know and believe the said report and statement to be false to the extent and in the mode and manner above set forth; and that they, and each of them, made said false statement and report in manner and form as above set forth with intent to deceive *the Comptroller of the Currency and* the agent appointed to examine the affairs of said association, and to injure, deceive, and defraud the United States and said association and the depositors thereof, and other banks and national banking associations, and divers other persons and associations to the jurors aforesaid unknown, against the peace of the United States and their dignity, and contrary to the form of the statute of the said United States in such case made and provided."

The defendants having been permitted to withdraw the pleas of not guilty which they had entered, were then allowed to demur to the indictment, and as it is important to be accurate in stating what was done about this demurrer, the transcript of the record on that subject is here inserted:

"United States

v.

Geo. M. Bain, Jr., John B. Whitehead, Orlando Windsor and C. E. Jenkins. } Indictment for making false entries, &c.

" This day came the parties, by their attorneys, pursuant to the adjournment order entered herein on the 13th day of November, 1886, and thereupon the defendants, by their counsel, asked leave to withdraw the pleas heretofore entered, which, being granted, they submitted their demurrer to the indictment, which, after argument, was sustained; and thereupon, on motion of the United States, by counsel, the court orders that the indictment be amended by striking out the words ' the Comptroller of the Currency and' therein contained.

"Thereupon, on motion of John B. Whitehead and C. E. Jenkins, by their counsel, for a severance of trial, it was ordered by the court that the case be so severed that George M. Bain, Jr., cashier and director, be tried separately from John B. Whitehead, Orlando Windsor and C. E. Jenkins, directors.

"Thereupon the trial of George M. Bain, Jr., was taken up, and the said defendant, George M. Bain, Jr., entered his plea of not guilty."

This was done December 13, 1886, thirteen months after the presentment of the indictment by the grand jury, and probably long after it had been discharged.

A verdict of guilty was found against Bain, a motion for a new trial was made, and then a motion in arrest of judgment, both of which were overruled. The opinion of the circuit judge on the question which we are about to consider, delivered in overruling that motion, is found in the record.

The proposition, that in the courts of the United States any part of the body of an indictment can be amended after it has been found and presented by a grand jury, either by order of the court or on the request of the prosecuting attorney, without being re-submitted to them for their approval, is one requiring serious consideration. Whatever judicial precedents there may have been for such action in other courts, we are at once confronted with the fifth of those articles of amendment,

adopted early after the Constitution itself was formed, and which were manifestly intended mainly for the security of personal rights. This article begins its enumeration of these rights by declaring that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on a presentment or indictment of a grand jury," except in a class of cases of which this is not one.

We are thus not left to the requirements of the common law, in regard to the necessity of a grand jury or a trial jury, but there is the positive and restrictive language of the great fundamental instrument by which the national government is organized, that "no person shall be held to answer" for such a crime, "unless on a presentment or indictment of a grand jury."

But even at common law it is beyond question that in the English courts indictments could not be amended. The authorities upon this subject are numerous and unambiguous. In the great case of *Rex* v. *Wilkes*, 4 Burrow, 2527, tried in 1770, which attracted an immense deal of public attention, Wilkes, after being convicted by a jury of having printed and caused to be published a seditious and scandalous libel, was brought up before the court of King's Bench on a motion to set aside the verdict, on the ground that an amendment had been made in the language of the information on which he was tried. In the course of an opinion delivered by Lord Mansfield overruling the motion, he remarks, on this subject (page 2569), that "there is a great difference between amending indictments and amending informations. Indictments are found upon the oaths of a jury, and ought only to be amended by themselves; but informations are as declarations in the King's suit. An officer of the Crown has the right of framing them originally; he may, with leave, amend in like manner, as any plaintiff may do."

Mr. Justice Yates, on the same occasion, said that indictments, being upon oath, cannot be amended (page 2570).

Hawkins, in his Pleas of the Crown, Book 2, c. 25, § 97, says :

"I take it to be settled that no criminal prosecution is

within the benefit of any of the statutes of Amendments; from whence it follows that no amendment can be admitted in any such prosecution but such only as is allowed by the common law. And agreeably hereto I find it laid down as a principle in some books, that the body of an indictment removed into the King's Bench from any inferior court whatsoever, except only those of London, can in no case be amended. But it is said that the body of an indictment from London may be amended, because, by the city charter, a tenor of the record only can be removed from thence."

He further says, § 98:

"It seems to have been anciently the common practice, where an indictment appeared to be insufficient, either for its uncertainty or the want of proper legal words, not to put the defendant to answer it; but, if it were found in the same county in which the court sat, to award process against the grand jury to come into court and amend it. And it seems to be the common practice at this day, while the grand jury who found a bill is before the court, to amend it, by their consent, in a matter of form, as the name or addition of the party."

This language is repeated in Starkie's Criminal Pleading, p. 287. There are, however, several cases in which it has been decided that the caption of an indictment may be amended, and we therefore give here the language of Starkie, p. 258, as describing what is meant by the phrase "caption of an indictment."

"Where an inferior court," he says, "in obedience to a writ of *certiorari* from the King's Bench, transmits the indictment to the Crown office, it is accompanied with a formal history of the proceeding, describing the court before which the indictment was found, the jurors by whom it was found, and the time and place where it was found. This instrument, termed a schedule, is annexed to the indictment, and both are sent to the Crown office. The history of the proceedings, as copied or extracted from the schedule, is called the *caption*, and is entered of record immediately before the indictment."

It will be seen that, as thus explained, the caption is no part of the instrument found by the grand jury.

Wharton, in his work on Criminal Pleading and Practice,

§ 90, says : "No inconsiderable portion of the difficulties in the way of the criminal pleader at common law have been removed in England by the 7 Geo. 4, c. 64, §§ 20, 21 ; 11 & 12 Vict., c. 46, and 14 & 15 Vict., c. 100, and in most of the states of the American Union, by statutes containing similar provisions." He also cites cases in the English courts, where amendments have been made under those statutes, but they can have no force as authority in this country, even if they permitted such amendments as the one under consideration.

No authority has been cited to us in the American courts which sustains the right of a court to amend any part of the body of an indictment without reassembling the grand jury, unless by virtue of a statute. On the contrary, in the case of *Commonwealth* v. *Child*, 13 Pick. 198, 200, Chief Justice Shaw says : " It is a well-settled rule of law that the statute respecting amendments does not extend to indictments ; that a defective indictment cannot be aided by a verdict, and that an indictment bad on demurrer must be held insufficient upon a motion in arrest of judgment."

In the case of the *Commonwealth* v. *Mahar*, 16 Pick. 120, the court, having held upon the arraignment of the defendant that the indictment was defective, the Attorney General moved to amend it, and the prisoner's counsel consented that the name of William Hayden, as the owner of the house in which the offence had been committed, should be inserted, not intending, however, to admit that Hayden was in fact the owner. "But the court were of opinion that this was a case in which an amendment could not be allowed, even with the consent of the prisoner."

In the case of *Commonwealth* v. *Drew*, 3 Cush. 279, Chief Justice Shaw said : "Where it is found that there is some mistake in an indictment, as a wrong name or addition, or the like, and the grand jury can be again appealed to, as there can be no amendment of an indictment by the court, the proper course is for the grand jury to return a new indictment, avoiding the defects in the first."

In the case of the *State* v. *Sexton*, 3 Hawks (N. C.) 184,[1] the

---

[1] *S. C.* 14 Am. Dec. 584.

Supreme Court of that state said: "It is a familiar rule that the indictment should state that the defendant committed the offence on a specific day and year, but it is unnecessary to prove, in any case, the precise day and year, except where the time enters into the nature of the offence. But if the indictment lay the offence to have been committed on an impossible day, or on a future day, the objection is as fatal as if no time at all had been inserted. Nor are indictments within the operation of the statutes of jeofails, and cannot therefore be amended; being the finding of a jury upon oath, the court cannot amend without the concurrence of the grand jury by whom the bill is found. These rules are too plain to require authority, and show that the judgment of the court was right, and must be affirmed."

It will be perceived that the amendment in that case had reference to a matter which the law did not require to be proved, as it was alleged, and which to that extent was not material.

The same proposition was held in the New York Court of General Sessions, in the case of *The People* v. *Campbell*, 4 Parker's Cr. Cas. 386, 387, where it was laid down that the averments in an indictment could not be changed, even by consent of the defendant.

The learned judge who presided in the Circuit Court at the time the change was made in this indictment, says that the court allowed the words "Comptroller of the Currency and" to be stricken out as surplusage, and required the defendant to plead to the indictment as it then read. The opinion which he rendered on the motion in arrest of judgment, referring to this branch of the case, rests the validity of the court's action in permitting the change in the indictment, upon the ground that the words stricken out were surplusage, and were not at all material to it, and that no injury was done to the prisoner by allowing such change to be made. He goes on to argue that the grand jury would have found the indictment without this language. But it is not for the court to say whether they would or not. The party can only be tried upon the indictment as found by such grand jury, and especially upon all

its language found in the charging part of that instrument. While it may seem to the court, with its better instructed mind in regard to what the statute requires to be found as to the intent to deceive, that it was neither necessary nor reasonable that the grand jury should attach importance to the fact that it was the Comptroller who was to be deceived, yet it is not impossible nor very improbable that the grand jury looked mainly to that officer as the party whom the prisoner intended to deceive by a report which was made upon his requisition and returned directly to him. As we have already seen, the statute requires these reports to be made to the Comptroller at least five times a year, and the averment of the indictment is that this report was made and returned to that officer in response to his requisition for it. How can the court say that there may not have been more than one of the jurors who found this indictment, who was satisfied that the false report was made to deceive the Comptroller, but was not convinced that it was made to deceive anybody else? And how can it be said that, with these words stricken out, it is the indictment which was found by the grand jury? If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

The importance of the part played by the grand jury in England cannot be better illustrated than by the language of Justice Field in a charge to a grand jury reported in 2 Sawyer, 667:

"The institution of the grand jury," he says, "is of very ancient origin in the history of England — it goes back many centuries. For a long period its powers were not clearly defined; and it would seem from the account of commentators on the laws of that country that it was at first a body which

not only accused, but which also tried, public offenders. However this may have been in its origin, it was at the time of the settlement of this country an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial. And in the struggles which at times arose in England between the powers of the king and the rights of the subject, it often stood as a barrier against persecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offences upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial."

The case of *Hurtado* v. *The People of California*, 110 U. S. 516, was a writ of error to the Supreme Court of that state, by a party who had been convicted of the crime of murder in the state court upon an information instead of an indictment. The writ of error from this court was founded on the proposition that the provision of the Fourteenth Amendment to the Constitution of the United States, that no state shall "deprive any person of life, liberty, or property, without due process of law," required an indictment as necessary to due process of

law. This court held otherwise, and that it was within the power of the states to provide punishment of all manner of crimes without indictment by a grand jury. The nature and value of a grand jury, both in this country and in the English system of law, were much discussed in that case, with references to Coke, Magna Charta, and to other sources of information on that subject, both in the opinion of the court and in an exhaustive review of that question by Mr. Justice Harlan in a dissenting opinion.

It has been said that, since there is no danger to the citizen from the oppressions of a monarch, or of any form of executive power, there is no longer need of a grand jury. But, whatever force may be given to this argument, it remains true that the grand jury is as valuable as ever in securing, in the language of Chief Justice Shaw in the case of *Jones* v. *Robbins*, 8 Gray, 329, "individual citizens" "from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of a grand jury;" and "in case of high offences" it "is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions."

It is never to be forgotten that, in the construction of the language of the Constitution here relied on, as indeed in all other instances where construction becomes necessary, we are to place ourselves as nearly as possible in the condition of the men who framed that instrument. Undoubtedly the framers of this article had for a long time been absorbed in considering the arbitrary encroachments of the crown on the liberty of the subject, and were imbued with the common law estimate of the value of the grand jury as part of its system of criminal jurisprudence. They, therefore, must be understood to have used the language which they did in declaring that no person should be called to answer for any capital or otherwise infamous crime, except upon an indictment or presentment of a grand jury, in the full sense of its necessity and of its value. We are of the opinion that an indictment found by a grand jury was indispensable to the power of the court to

try the petitioner for the crime with which he was charged. The sentence of the court was that he should be imprisoned in the penitentiary at Albany. The case of *Ex parte Wilson*, 114 U. S. 417, and the later one of *Mackin* v. *United States*, 117 U. S. 348, establish the proposition that this prosecution was for an infamous crime within the meaning of the constitutional provision.

It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists. It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offence is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be "held to answer," he is then entitled to be discharged so far as the offence originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a *nolle prosequi* had been entered. There was

nothing before the court on which it could hear evidence or pronounce sentence. The case comes within the principles laid down by this court in *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *Ex parte Wilson*, 114 U. S. 417, and other cases.

These views dispense with the necessity of examining into the questions argued before us concerning the formation of the grand jury and its removal from place to place within the district. We are of opinion that

> *The petitioner is entitled to the writ of habęas corpus, and it is accordingly granted.*