**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul Merville PREJEAN,**
**Defendant-Appellant.**

No. 73–2988.

United States Court of Appeals,
Fifth Circuit.

May 23, 1974.

Jones, Circuit Judge, concurred in the result.

Anthony C. Aguilar, Dick Stengel, El Paso, Tex., for defendant-appellant.

William Sessions, U. S. Atty., San Antonio, Tex., Edward S. Marquez, Ronald F. Ederer, William B. Hardie, Jr., Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

THORNBERRY, Circuit Judge:

In this direct criminal appeal Prejean challenges his conviction for burglarizing a house on a military reservation in violation of the Assimilative Crimes Act.[1] After careful examination of the case, we conclude that the evidence fails to substantiate the indictment's burglary accusation, and we reverse.

## I.

Viewing the evidence in the light most favorable to the Government, the operative facts are as follows. Michael O'Toole, age fifteen, lived with his parents in a house located on the grounds of Fort Bliss, near El Paso, Texas. Michael and his friend P. H. Smith desired to travel to Port Arthur, Texas, but lacked funds for the trip. Appellant Prejean was planning a trip to the Port Arthur area and would take the boys along if they would share expenses. O'Toole decided to obtain the needed money by taking his mother's cash box while she slept.

With full knowledge of O'Toole's mission, Prejean drove the two boys to O'Toole's house in the wee hours of the morning of September 13, 1972. He waited in the car while O'Toole unsuccessfully tried the front door, crawled through a bedroom window, stole his mother's cash box and returned to the car. The trio then drove to a local restaurant where police apprehended them.

## II.

The Assimilative Crimes Act, 18 U.S.C.A. § 13, adopts for each federal enclave the penal laws of the state where it is located. It is a shorthand method of providing a set of criminal laws on federal reservations by using local law to fill the gaps in federal criminal law.

In this case the indictment[2] charged Prejean with burglarizing the O'Toole house in violation of the Assimilative Crimes Act and the adopted state statute, Article 1389 of the Texas Penal

[1]. Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

Assimilative Crimes Act, 18 U.S.C.A. § 13 (1969).

[2].

FIRST COUNT
(18 U.S.C. § 13)
(Article 1389 Penal Code of Texas)

That on or about September 12, 1972, in the Western District of Texas, PAUL MERVILLE PREJEAN, with intent to steal, did break and enter a building, that is, the residence of SFC Charles L. O'Toole, located on a Military Reservation, to wit: Fort Bliss, Texas, a place under the exclusive jurisdiction of the United States.

Code.[3] While Prejean never entered the house, as an accomplice he is vicariously liable for O'Toole's acts. Thus the issue is whether O'Toole's actions constitute burglary under Article 1389 of the Texas Penal Code.

The parties have argued at considerable length over the sufficiency of the indictment. We think it clear that the indictment states an offense, violating Article 1389. The difficulty is that the indictment charges the wrong offense.

▇▇▇ The Fifth Amendment gives every indicted defendant the right to be tried only on the charges made by the grand jury that indicted him. If he is to be convicted, the conviction must rest solely on the charges made by the indictment. Neither the prosecution nor the trial judge can alter the charge to fit the proof; to do so would be usurping the function of the grand jury. Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; United States v. Beard, 5th Cir. 1971, 436 F.2d 1084. *See* Ex parte Bain, 1887, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.

In this case the Assimilative Crimes Act adopts for Fort Bliss the Texas law of burglary. *See* United States v. Frazier, 5th Cir. 1971, 444 F.2d 235; United States v. Beard, 5th Cir. 1971, 436 F.2d 1084; United States v. Evans, 5th Cir. 1969, 415 F.2d 340. Texas burglary law distinguishes between ordinary burglary and burglary of a private residence at night. Article 1389 defines ordinary burglary, whose elements include entering a house in either day or night

with the intent of committing theft. It carries a penalty of two to twelve years in prison. Texas Penal Code Ann. art. 1397 (1953). Article 1391[4] defines a different burglary offense, burglary of a private residence at night. As the title implies, the offense can be committed only at nighttime, and the structure burglarized must be "any building or room occupied and actually used at the time of the offense by any person as a place of residence." The punishment is substantially harsher than the penalty for violating Article 1389; the minimum sentence is five years, and no maximum is provided. To illustrate the difference between the two types of burglary, burglarizing a vacant house would be a violation of Article 1389 and would not be punishable under Article 1391.

▇▇▇ Article 1391 specifically states that burglary of a private residence at night is a "separate offense." That it is separate and distinct from Article 1389 burglary is emphasized by a line of cases from the Texas Court of Criminal Appeals, the state's highest criminal tribunal. *E. g.,* Bowie v. State, 401 S.W.2d 829 (Tex.Cr.App.1966); Litchfield v. State, 159 Tex.Cr.R. 5, 259 S.W.2d 228 (1953); Shaffer v. State, 137 Tex.Cr.R. 476, 132 S.W.2d 263 (1939); Crawford v. State, 127 Tex.Cr.R. 550, 78 S.W.2d 623 (1935); Martinus v. State, 47 Tex. Cr.R. 528, 84 S.W. 831 (1905). These cases hold that Articles 1389 and 1391 state separate and distinct offenses. They are so separate and distinct that the Texas Court of Criminal Appeals on occasion has reversed convictions under

---

3. Article 1389 provides:

   The offense of burglary is constituted by entering a house by force, threats or fraud, at night, or in like manner by entering a house at any time, either day or night, and remaining concealed therein, with the intent in either case of committing a felony or the crime of theft.

   Texas Penal Code Ann. art. 1389 (1953).

4. Article 1391 provides:

   The offense of burglary of a private residence at night is constituted by entering a private residence by force, threats or fraud, at night, or in any manner by entering a private residence at any time, ei-

ther day or night, and remaining concealed therein until night, with the intent, in either case, of committing a felony, or the crime of theft. The term "private residence," as used herein, means any building or room occupied and actually used at the time of the offense by any person as a place of residence. One guilty of burglary of a private residence at night shall be confined in the penitentiary for any term not less than five years. Such burglary is a distinct offense, and nothing making it such shall alter or repeal the two preceding articles.

Texas Penal Code Ann. art. 1391 (1953).

indictments charging a violation of Article 1389 when the proof showed burglary of a private residence at night. Litchfield v. State, Crawford v. State, and Martinus v. State, *supra*. *See also* Bowie v. State and Shaffer v. State, *supra*.

■ The indictment in the instant case charged burglary of the O'Toole house in violation of Article 1389. But the proof adduced showed that the structure entered was an occupied private residence, and the entry occurred at night. Therefore the Government proved a violation of Article 1391, if it proved burglary at all. Since Prejean was convicted for an offense not alleged in the grand jury's indictment, the conviction is invalid.

### III.

■ Reversal is required for yet another reason. Under Texas law the general rule is that one cannot be convicted of burglary unless he entered the premises without the owner's consent.[5] Even if he commits theft once inside, if the owner consented to his entry, he cannot be convicted of burglary. Stallworth v. State, 167 Tex.Cr.R. 19, 316 S.W.2d 417 (1958); Jones v. State, 155 Tex.Cr.R.

481, 236 S.W.2d 805 (1951); Shaffer v. State, 137 Tex.Cr.R. 476, 132 S.W.2d 263 (1939) (dicta); Texas Penal Code Ann. art. 1392 (1953); 10 Tex.Jur.2d Burglary § 80 (1959, Supp.1973).

■ The Government did not adequately prove lack of consent. On direct examination the prosecutor asked Michael's father, SFC O'Toole:

> Did you at any time give any consent to your son . . . to break into your home and remove any of the property therein?

The father replied, "No, sir, I did not." establishing that he did not consent to his son's alleged acts of breaking[6] and theft. But entry is an element of burglary separate from breaking, and the prosecution did not ask SFC O'Toole whether Michael had his permission to enter the house. It seems inconceivable, moreover, that SFC O'Toole would deny his son permission to enter the family home, where the boy was living at the time.[7] Michael had merely gone out for the evening and stayed past the 10:00 p. m. curfew imposed by his parents. Without direct proof of lack of consent to enter, the conviction for burglary cannot stand.[8]

---

5. *But cf.* Trevino v. State, 158 Tex.Cr.R. 255, 254 S.W.2d 786 (1953). There the court held that implied consent to enter was no defense to a charge of burglarizing a church if the consent was limited and the entry fell outside the limitation. The public was invited to enter the church solely for the purpose of meditation and prayer, but Trevino did not enter for that reason. A boy's home, by contrast, is not a special purpose institution extending a limited implied consent to his entry. *See* Jones v. State, 155 Tex.Cr.R. 481, 236 S.W.2d 805 (1951). *See generally* Annot., 93 A.L.R.2d 531 (1964).

6. Michael O'Toole entered through a bedroom window. The record does not indicate whether he had to open the window, or whether it was already open. If the latter was the case, then there would have been no breaking.

7. In Randall v. State, 436 S.W.2d 157 (Tex. Cr.App.1969) a burglary victim was asked: Did you give this defendant or anyone else your consent and permission to break

and enter that store and take whatever was taken from the store?
The victim responded, "No," and the court held that the State adequately negated the possibility that the victim had consented. In that case, however, the victim was asked if he consented to defendant's *entry*. Furthermore, the defendant did not live on the burglarized premises, and there was no showing of a familial relationship between defendant and the victim. In other words, very little was required to negate the possibility of consent. The case at bar presents an entirely different situation.

8. Michael O'Toole tried first to enter through the front door, but was unable to open it. We infer from that that the door was locked. A locked door would give rise to the inference that his father did not consent to his entry, but the Texas Court of Criminal Appeals has held that if the owner of the burglarized premises testified, lack of consent may not be proven by circumstantial evidence. Stallworth v. State, 167 Tex.Cr.R. 19, 316 S.W.2d 417 (1958).

## IV.

To summarize, Prejean's conviction must be reversed because the Government's evidence fails to support the grand jury indictment. In the first place, the Government selected the wrong burglary statute from the Texas Penal Code. The evidence showed a theft from a private residence; therefore if a burglary occurred, it was a violation of Article 1391, not Article 1389. A conviction for violating Article 1389 violates Prejean's right to be tried on the same offense for which he was indicted. Furthermore, the evidence does not negate the possibility that Michael had consent to enter his family's house; therefore it fails to show burglary. Thus the Government erred first by charging Prejean with burglary and then compounded its error by charging the wrong type of burglary. Consequently the conviction must be

Reversed.

JONES, Circuit Judge, concurs in the result.