UNITED STATES of America,
Plaintiff-Appellee,

v.

STEWART CLINICAL LABORATORY, INC., Edward Morris Jorgensen and James Stewart, Defendants-Appellants.

No. 80–1539.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1981.

Decided July 6, 1981.

As Amended July 8, 1981.

William Bryan Osborne, Monterey Park, Cal., for defendants-appellants.

Deanne H. Smith, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee; Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and SCHROEDER, Circuit Judges, and EAST,* District Judge.

GOODWIN, Circuit Judge.

Edward Jorgensen, James Stewart and Stewart Clinical Laboratory appeal their convictions by a jury for offering free medical laboratory services in exchange for referring government-paid medical laboratory work, in violation of 42 U.S.C. § 1396h(b)(2)(A). We reverse the convictions.

Jorgensen and Stewart are the owners and operators of Stewart Clinical Laboratory, Inc. Dr. Donald Dorr, the administrator of a medical clinic, agreed to cooperate with a Federal Bureau of Investigation probe of Medi-Cal[1] fraud by arranging a meeting with Jorgensen, ostensibly to discuss the referral of Dorr's laboratory work to the Stewart Clinical Laboratory.

On August 17, 1979, Dorr and Jorgensen met at Dorr's clinic. Dorr informed Jorgensen that he was looking for a new lab to do his clinic's laboratory work. Dorr represented that approximately 80 percent of the referred work would be paid for by Medi-Cal. The other 20 percent of his practice, he said, consisted of private patients. Jorgensen expressed interest in Dorr's laboratory account, but told Dorr that he could not offer him "a brown envelope" or a new car to induce him to refer his Medi-Cal work. Jorgensen articulated his belief that the law prohibited volume discounts for Medi-Cal accounts. Jorgensen then suggested that if Dorr would refer his Medi-Cal business to the laboratory, the laboratory would provide him with free lab service for his private patients. Jorgensen explained that the laboratory would bill Dorr for the private patient work, but Dorr need not pay the bills. After a few months, the laboratory would then write off the private patient bills as a bad debt. Jorgensen proposed that they give their arrangement a one or two month trial run to see if the Medi-Cal percentages were, in fact, the 70 percent to 80 percent Dorr represented them to be.

Dorr subsequently arranged another meeting with both Jorgensen and Stewart. They again suggested that they would provide free private patient work if Dorr referred his Medi-Cal business to them. The appellants, however, refused to reduce this arrangement to writing. Dorr did not again contact the appellants, and they did not attempt to contact him.

On May 1, 1980, a federal grand jury returned a one count indictment against the appellants, charging them with offering to pay a remuneration "to a person to induce said person to refer his patients" to their lab in violation of 42 U.S.C. § 1396h(b)(2)(A). Evidence against the appellants consisted primarily of tape recordings of the two meetings, made by the government without appellants' knowledge. Appellants were convicted by a jury in July 1980.

Appellants contend that while they may have offered remuneration as an inducement for Dorr to refer Medi-Cal lab service business to the Stewart Clinical Laboratory, in violation of 42 U.S.C. § 1396h(b)(2)(B), the government presented no evidence that the appellants offered free private patient work for Dorr "to refer an *individual*" to appellants, in violation of 42 U.S.C. § 1396h(b)(2)(A).

42 U.S.C. § 1396h(b) originally provided that:

> "Whoever furnishes items or services to an individual for which payment is or may be made in whole or in part out of Federal funds under a State plan approved under this subchapter and who solicits, offers or receives any—

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. California participates in the federal Medicaid medical assistance system, 42 U.S.C. § 1396 *et seq.*, through its Medi-Cal program. *See*: Cal. Welf. & Inst.Code § 14101.1 (West 1980). Under Medicaid and Medi-Cal, the federal Department of Health and Human Services funds approximately fifty percent of California's eligible Medicaid costs. *Id.*

(1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment, or

(2) rebate of any fee or charge for referring any such individual to another person for the furnishing of such items or services

shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both."

In 1977, Congress amended the statute to "clarify and restructure those provisions in existing law which define the types of financial arrangements and conduct to be classified as illegal under medicare and medicaid." 3 U.S.Code Cong. and Adm. News 3039, 3055 (1977). Section 1396h(b)(2)(A) and (B), as amended, provide:

"Whoever offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) *to refer an individual to a person* for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under this subchapter, or

(B) to purchase, lease or order, or arrange for or recommend purchasing, leasing, or ordering *any good, facility, service, or item* for which payment may be made in whole or in part under this subchapter, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both." (Emphasis added.)

No reported decision has interpreted the relevant provisions of the statute as amended. The amendments effectively eliminated any problems presented by the distinction between a kickback or bribe and a rebate, *see, e. g., United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979), by making illegal all forms of improper remuneration. Nevertheless, Congress continued to divide § 1396h(b) into two subsections. The

amendments, therefore, shift the focus of the operative distinction between the subsections from the type of payoff involved to the nature of the referred Medicare or Medicaid business—individuals or services.

The indictment charged the appellants: "(8) From on or about August 27, 1979, to on or about September 12, 1979, . . . [appellants] did offer to pay a remuneration, in form of a discount on private patient billings, to a person *to induce said person to refer his patients* to Stewart Clinical Laboratory, Inc. for the furnishing of an item or service for which payment may be made in whole or in part out of federal funds in violation of Title 42, United States Code, Section 1396h(b)(2)(A), as amended October 25, 1977." (Emphasis added.)

At trial, the district court instructed the jury by reading to it the text of § 1396h(b)(2)(A). The court, however, next paraphrased the statute by describing as one essential element of the offense:

" . . . THIRD: That the defendants offered the remuneration to Dr. Dorr to induce him to refer the laboratory work for Medi-Cal patients to Stewart Clinical Laboratory . . . ."

The jury had a copy of the indictment in the jury room.

The government concedes that the proof at trial showed that Dr. Dorr would (if the agreement were to be consummated) refer blood and urine specimens and similar packages to Stewart Clinical Laboratory for testing. The plan called not for the patients themselves to go the lab, but for Dr. Dorr to send their bodily substances to the laboratory. The government now asserts that any difference is "merely technical."

■ Both the indictment and § 1396h(b)(2)(A) speak of referring "an individual" to a person. Interpreting "an individual" to include "parts and substances removed from an individual" works a tortured construction of the statutory language. By dividing § 1396h(b)(2) into two subsections, Congress obviously intended to proscribe two entirely different types of

behavior. Subsection (A) prohibits payoffs for referring Medi-Cal patients. Subsection (B) prohibits payoffs for referring Medi-Cal services, including laboratory work. Appellants were indicted, tried and convicted under the wrong statute.

 In federal court a defendant may not be convicted of an offense different from that specifically charged by the grand jury. *Stirone v. United States*, 361 U.S. 212, 215–19, 80 S.Ct. 270, 272–274, 4 L.Ed.2d 252 (1960); *see also, Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962); *Ex Parte Bain*, 121 U.S. 1, 10–13, 7 S.Ct. 781, 786–787, 30 L.Ed. 849 (1887). The court may not amend the indictment by changing the offense charged to conform with the proof adduced at trial. *Id. See also: United States v. Camp*, 541 F.2d 737 (8th Cir. 1976); *Stewart v. United States*, 395 F.2d 484, 488 (8th Cir. 1968). The court may not substantially amend the indictment through its instructions to the jury. *See United States v. Edwards*, 465 F.2d 943, 950 (9th Cir. 1972); *Edgerton v. United States*, 143 F.2d 697, 698 (9th Cir. 1944). *See also Heisler v. United States*, 394 F.2d 692 (9th Cir.), *cert. denied*, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968).[2]

 The government contends that this case involves a mere variance between facts alleged in the indictment and evidence produced at trial, and that the variance is not fatal to the conviction unless prejudicial to the appellants' rights to notice of charges against them and protection against double jeopardy. *United States v. Dawson*, 516 F.2d 796, 804 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975). But the appellants were convicted of an offense that was not charged in the indictment. The court did not simply correct a clerical error or eliminate surplusage from the text of the indictment. *United States v. Abascal*, 564 F.2d 821, 832 (9th Cir. 1977), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *United States v. Lyman*, 592 F.2d 496, 500–501 (9th Cir. 1978), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979). Correcting an obvious clerical mistake may be harmless error, *Heisler v. United States, supra*, 394 F.2d at 695–96; *United States v. Somers*, 496 F.2d 723, 744 (3rd Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); but amending the indictment to charge a new crime constitutes *per se* reversible error. *Stirone v. United States*, 361 U.S. 212, 219, 80 S.Ct. 270, 274, 4 L.Ed.2d 252 (1960); *United States v. Beeler*, 587 F.2d 340, 343 (6th Cir. 1978). Because the variance here was fatal, we need not reach the other issues raised on appeal.[3]

The conviction is reversed.

SCHROEDER, Circuit Judge, dissenting:

In my view the subsection of the statute cited in the indictment, 42 U.S.C. § 1396h(b)(2)(A) encompasses the referral of patient work from one health care provider to another. That is what occurred here. There is no claim that the defense would have been different if subsection (B) had been charged. I cannot accept the majority view that subsection (A) is violat-

---

**2.** This case closely resembles *United States v. Prejean*, 494 F.2d 495 (5th Cir. 1974), in which the court reversed an Assimilative Crimes Act conviction involving Texas burglary law because:

> "The indictment in the instant case charged burglary of the O'Toole house in violation of Article 1389 [of the Texas Penal Code]. But the proof adduced showed that the structure entered was an occupied private residence, and the entry occurred at night. Therefore, the Government proved a violation of Article 1391, if it proved burglary at all. Since Prejean was convicted for an offense not alleged in the grand jury's indict-

ment, the conviction is invalid." 494 F.2d at 498.

**3.** Appellants also argued on appeal that the government did not prove what they characterize as an essential element of a § 1396h(b)(2) violation by failing to present any evidence that appellants did not disclose their arrangement with Dr. Dorr to Medi-Cal officials; that they never made an "offer to remunerate," 42 U.S.C. § 1396h(b)(2)(A), in exchange for Medi-Cal business; that they lacked the specific intent necessary to violate § 1396h(b)(2)(A); and that the district court erred by denying their request for an entrapment instruction.

ed only if the patient himself physically journeys to the office where the referred services are performed. It should make no difference whether the substance to be analyzed arrives at the defendant's premises in a bladder or in a bottle.

I therefore respectfully dissent from the majority's holding that there was a fatal variance between the crime charged and the crime of which appellant was convicted.