**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**James J. PAZSINT,**
**Defendant/Appellant.**

No. 82–1492.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1983.

Decided April 8, 1983.

As Modified June 23, 1983.

Donald W. MacPherson, MacPherson, & McCarville, Phoenix, Ariz., for defendant/appellant.

James L. Swartz, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff/appellee.

Before GOODWIN, ALARCON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

James Pazsint was convicted of forcibly assaulting a federal officer with the use of a deadly or dangerous weapon in violation of 18 U.S.C. § 111. He appeals, contending, *inter alia,* that he was convicted of an offense not charged in the indictment and

that there was error in the jury instructions and in the admission of certain evidence. Finding merit in these contentions, we reverse.

## FACTS

On the morning of February 9, 1982, in Anchorage, Alaska, Joseph A. Skeete, an Internal Revenue Service agent assigned to call on delinquent taxpayers, went to the home of James and Holly Pazsint to make inquiry regarding the Pazsints' tax returns. Mrs. Pazsint, who was over eight months pregnant, opened the door and spoke with Skeete while he remained outside. Skeete identified himself and showed his credentials, stating that he had come to discuss income tax matters. Mrs. Pazsint replied that her husband took care of such matters and that Skeete would have to talk with him. The agent attempted to question Mrs. Pazsint about her own income in the years 1979 and 1980, but she refused to reply and again referred him to her husband. Skeete gave her his business card and asked her to have Mr. Pazsint call him the next day. He then returned to his car, which was parked at the curb in front of the Pazsints' home, and remained there while he wrote out a report of the contact.

According to her testimony, Mrs. Pazsint had been frightened by Skeete because he was black, rather casually dressed, in an unmarked car, and she had not been able to see his credentials when he held them up. When, a short time later, she noticed that Skeete was still sitting in front of her house, she called her husband, who managed a gas station nearby, and asked him to come to her aid. She described Skeete and his car to her husband, explaining that he had said he was an IRS agent, had questioned her, and that he would not leave.

Before Pazsint arrived, Skeete had left the house and pulled out onto the highway, driving slowly because the streets were slick with ice. Pazsint, driving a pickup truck, chased Skeete and forced him off the highway. Carrying a .44 caliber handgun, Pazsint jumped from his truck and forced Skeete to the rear of his car. He ordered Skeete to take a spread-eagle position across the trunk while he frisked him. Pazsint, who was extremely excited, used obscenities and repeatedly asked what Skeete meant in coming to his home and threatening his wife. He refused to let Skeete identify himself.

Residents in the apartment house overlooking the scene telephoned the police to report the incident. Their calls were tape-recorded at the station. Pazsint flagged down a motorist and asked him to call the police, saying he had made a citizen's arrest. Until the police arrived Pazsint continued to display the gun and made Skeete remain spread-eagled on the trunk of his car. On their arrival, the police took both the .44 caliber revolver and a smaller pistol from Pazsint, and all parties went to the police station.

Pazsint was charged on a one-count grand jury indictment of impeding, intimidating, and interfering with an officer of the Internal Revenue Service by use of a deadly or dangerous weapon in violation of 18 U.S.C. § 111, a felony. He was, however, tried before a jury which was instructed only in the crime of forcible assault, and was found guilty of forcibly assaulting a federal officer with the use of a deadly or dangerous weapon. He was sentenced to three years' incarceration.

During the trial Pazsint directed both the court's and the prosecution's attention to the fact that he had not been charged with assault, but rather with forcibly impeding, intimidating, and interfering with an officer. He raised this issue: (1) when objecting to the admission of certain evidence, (2) while making his motion for acquittal at the close of the prosecution's case-in-chief, (3) when objecting to certain jury instructions, and (4) when objecting to the entry of the verdict. The court overruled these objections and denied the motion for acquittal.

## ANALYSIS

I. Conviction of an Offense Not Charged in the Indictment was Improper.

The indictment returned by the grand jury in this case bore the caption "Assault

on a Federal Officer, Violation of 18 U.S.C. § 111." However, the body of the indictment did not mention the offense of assault; rather it read:

> On or about February 9, 1982, in Anchorage, Alaska, in the District of Alaska, JAMES J. PAZSINT did unlawfully and wilfully, by use of a deadly or dangerous weapon, forcibly impede, intimidate and interfere with an officer of the Internal Revenue Service as designated in Title 18, United States Code, Section 1114, while said officer was engaged in or on account of the performance of his official duties, the aforesaid being done by JAMES J. PAZSINT in violation of Title 18, United States Code, Section 111.

After jury trial, supposedly on the charge in this indictment, the defendant was found guilty of a different crime—that of forcibly assaulting a federal officer with the use of a deadly or dangerous weapon.

 Except for the well-understood rules covering lesser included offenses, "In federal court a defendant may not be convicted of an offense different from that specifically charged by the grand jury." *United States v. Stewart Clinical Laboratory, Inc.,* 652 F.2d 804, 807 (9th Cir.1981). After an indictment has been returned, its charges may not be broadened through amendment—whether it be by physical alteration, jury instruction, or bill of particulars—except by the grand jury. *Russell v. United States,* 369 U.S. 749, 769–71, 82 S.Ct. 1038, 1050–1051, 8 L.Ed.2d 240 (1962); *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 272–273, 4 L.Ed.2d 252 (1960); *Ex parte Bain,* 121 U.S. 1, 10–13, 7 S.Ct. 781, 786–787, 30 L.Ed. 849 (1887). Simply correcting an obvious clerical error or eliminating surplusage from the text of the indictment may be harmless error, but amending the indictment to charge a new crime through the jury instructions constitutes *per se* reversible error. *United States v. Stewart Clinical Laboratory, Inc.,* 652 F.2d at 807, *citing Stirone v. United States,* 361 U.S. at 219, 80 S.Ct. at 274. *See also United States v. Dawson,* 516 F.2d 796, 800–04 (9th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975); *Edger-*

*ton v. United States,* 143 F.2d 697 (9th Cir.1944).

 Here, Pazsint was convicted of assault, a crime that was not charged in the indictment. Although 18 U.S.C. § 111 states that "whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with certain federal officers or employees shall be guilty of a felony, the grand jury, in returning the indictment, chose to omit the words "assaults," "resists," and "opposes," charging Pazsint only with impeding, intimidating, and interfering. Although the caption of the indictment mentions "assault," it is well established that the caption is completely surplusage and does not control the body of the indictment. *United States v. Dawson,* 516 F.2d at 804. Nor does the fact that it is stated in the indictment that Pazsint violated 18 U.S.C. § 111 imply that he is charged with all the unlawful acts listed in that statute, as the statutory citation is not regarded as part of the indictment. *United States v. Clark,* 416 F.2d 63, 64 (9th Cir. 1969).

In *Stirone v. United States,* 361 U.S. at 218–19, 80 S.Ct. at 274, the Supreme Court stated:

> The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment . . . [W]e cannot know whether the grand jury would have included in its indictment [an additional charge]. . . . Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error.

Here there is not even a question, as there was in *Stirone,* of whether or not Pazsint was convicted on the charge returned by the grand jury; the instructions and possible verdict forms dealt only with the uncharged crime and, therefore, the jury could not have found the defendant guilty of any other offense, including those mentioned in

the indictment. Pazsint was clearly convicted of an offense with which he was not charged in the indictment. *A fortiori,* this constitutes reversible error.

## II. The Jury Instructions Were Improper.

 In reviewing jury instructions, the court must consider whether the instructions as a whole were misleading or inadequate to guide the jury's determination. *Stoker v. United States,* 587 F.2d 438, 440 (9th Cir.1978). As previously discussed, the *only* offense in which the judge instructed the jury was forcible assault. Therefore, since he also read the indictment to the jury, the instructions as a whole were both conflicting and misleading in that the instructions erroneously described the offense charged in the indictment and failed to guide the jury on the offense which was charged. "[A] conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue." *United States v. Bagby,* 451 F.2d 920, 927 (9th Cir.1971), *citing Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

 Although Pazsint timely objected to only two of the instructions on the ground that he had not been charged by the grand jury with assault, the instructions as a whole may be reviewed here because there was plain error. *See* Fed.R.Crim.P. 52(b). The instructions only permitted the jury to determine the defendant's guilt or innocence of a crime not charged in the indictment, and this was plain error since "[t]he court may not substantially amend the indictment through its instructions to the jury." *United States v. Stewart Clinical Laboratory, Inc.,* 652 F.2d at 807; *see also United States v. Edwards,* 465 F.2d 943, 950 (9th Cir.1982); *Edgerton v. United States,* 143 F.2d at 698. In the Ninth Circuit it is well established that "erroneous instructions are cause for reversal, even absent defendant's timely objection, if plain error affecting substantial rights of the defendant occurred." *United States v. Bagby,* 451 F.2d at 927; *see also United States v. Harvey,* 428 F.2d 782, 783 n. 1 (9th Cir. 1970). Here the instructions "destroyed the

defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury," *Stirone v. United States,* 361 U.S. at 217, 80 S.Ct. at 273, and therefore are cause for reversal.

## III. Tapes of Emergency Calls Were Erroneously Admitted.

The trial court allowed the jury to hear the tape-recorded emergency calls which witnesses made to the police station reporting the actions of Pazsint and Skeete. Pazsint objected on grounds of hearsay, irrelevance, and prejudice beyond any probative value due to background sounds and voices of third persons. His hearsay objection was overruled, and the court admitted the tapes as a record made during regularly conducted business activity under Rule 803(6) of the Federal Rules of Evidence after the duty officer testified that all such emergency calls received at the station were routinely recorded and kept for sixty days. His objections on grounds of relevance and prejudice were overruled after the district court listened to the tapes outside the presence of the jury, found their probative value outweighed any possible prejudice, and subsequently cautioned the jury not to give any weight to noises on the tapes other than the voices of the caller and the answering officer.

 The recordings should not have been admitted under the business records exception to the hearsay rule. That exception applies only if the person furnishing the information to be recorded is "acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'" *Clark v. City of Los Angeles,* 650 F.2d 1033, 1037 (9th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982); Advisory Committee Note to Fed.R.Evid. 803(6). It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not. *United States v. Sims,* 617 F.2d 1371,

1377 (9th Cir.1980); *United States v. Smith,* 521 F.2d 957, 964 (D.C.Cir.1975); *Colvin v. United States,* 479 F.2d 998, 1003 (9th Cir. 1973).

Here the police officer who made the recordings was acting in the regular course of business, but he had no knowledge of the truthfulness of the information being recorded, while the witnesses who gave the information which was recorded had personal knowledge but were under no business duty to report. The latter's tape-recorded statements can not be given the presumption of reliability and regularity accorded a business record. *See United States v. Smith,* 521 F.2d at 964; Advisory Committee Note to Fed.R.Evid. 803(6). Therefore, while the direct testimony of the witnesses was admissible at trial, the tapes were not. We conclude that the district court erred in allowing them to be played. Our disposition of this case, however, makes it unnecessary to determine whether, standing alone, such an error would require reversal under the test summarized in *United States v. Hollingshead,* 672 F.2d 751, 755 (9th Cir.1982).[1]

Pazsint also contends that various other errors were made before and at trial. However, it is not necessary to discuss these contentions as they are either without merit or result solely from Pazsint's trial and conviction for an offense with which he was not charged in the indictment. The judgment of conviction is REVERSED.

---

1. We do not express an opinion whether or not the tape recordings may be admissible on other