**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ronald G. LYMAN, Defendant-Appellant.**

**No. 77–4007.**

United States Court of Appeals, Ninth Circuit.

Nov. 17, 1978.

As Amended on Denial of Rehearing and Rehearing En Banc Feb. 21, 1979.

Michael Tryon (argued), of McGroder & Tryon, P.C., Phoenix, Ariz., for defendant-appellant.

Mark S. Davidson, Atty. (argued), Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TRASK and WALLACE, Circuit Judges, and HOFFMAN,* District Judge.

WALLACE, Circuit Judge:

Lyman appeals his conviction of conspiracy to transport in interstate commerce over $5,000 taken by fraud in violation of 18 U.S.C. § 371.[1] His appeal challenges the conduct of the prosecution and a key witness, Justheim; changes in and conformity at trial to the indictment against him; the naming of unindicted coconspirators; proof of a single conspiracy; and the failure of the court to give a requested instruction. We affirm.

During the trial, the government introduced evidence to the effect that Lyman and two government witnesses, Bradshaw and King, participated in a scheme involving their corporation (New Era) to defraud investors, among them Justheim and Watson, by false representations about the worth of ore from Llano, Texas (Llano ore), and the ability of their process (the New Era process) to extract precious metals from the ore. The scheme involved fraudulent tests of the ore for the investors at which the conspirators "salted" the ore to make it appear more valuable to the investors. Evidence also indicated that the conspirators made false representations about the existence of purchase orders for the ore.

Lyman contended that he believed that the New Era process could analyze precious metal content; that he did not know Bradshaw was salting the ore; and denied that he, Bradshaw and King had agreed to do so.

I

In his closing remarks to the jury, the prosecutor stated that Bradshaw was a good witness because he had kept notes in a diary "to refresh his recollection about dates and so forth." Following the prosecutor's argument, Lyman's counsel moved for a mistrial and for discovery of the diary, stating that he had no knowledge of its existence. Later the same day, following the court's instructions to the jury, Lyman's counsel requested production of the diary on the basis of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Jencks Act, 18 U.S.C. § 3500 (1976). The trial judge stated that he did not know "if there even exists a diary and I'm not going to take it up right now." On Monday, the next court day, the jury arrived at a verdict, and thereafter the district judge asked Lyman's attorney if he had "anything else for the record at this time." Counsel replied he did not.

On appeal, Lyman asserts that if there is a diary, there should be a remand

---

* Honorable Walter E. Hoffman, United States District Judge, Eastern District of Virginia, sitting by designation.

1. Lyman was convicted on the conspiracy count and acquitted on substantive counts based on 18 U.S.C. § 2314. Another defendant, Buchanan, was tried with Lyman and acquitted. Others named in the indictment as codefendants were Bradshaw, King, Lincecum, and Wilson.

to the district court for a determination of whether it constituted material that should have been disclosed to the defense. There is, however, no court ruling for us to review. Counsel failed to pursue the question and obtain a decision. Therefore, we consider the matter to have been abandoned. *Cf. United States v. Mireles*, 570 F.2d 1287, 1290 (5th Cir. 1978) (where counsel neither objected to admission of evidence previously sought to be suppressed, sought a directed verdict of acquittal, nor requested a ruling on motion to suppress, and no ruling was ever made, it was "clear that defendant effectively abandoned the motion to suppress").

## II

■ As a separate challenge pertaining to this incident, Lyman states that the diary remark to the jury was improper prosecutorial conduct. We must first decide whether Lyman's objection to this remark was timely so as to have preserved the question for appeal. The government points out that Lyman's counsel failed to object to the diary remark until the conclusion of the rebuttal argument. We see no reason, however, to require an interruption of the prosecutor's argument. "[W]e recognize the tactical considerations that militate against interrupting an adversary's closing argument." *United States v. Trutenko*, 490 F.2d 678, 680 (7th Cir. 1973). Counsel's motion for a mistrial following the rebuttal argument in which the remark occurred

was sufficient to preserve the point for appeal. *See United States v. Williams*, 503 F.2d 480, 485 (8th Cir. 1974); *United States v. Perez*, 491 F.2d 167, 173 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974); *United States v. Zumpano*, 436 F.2d 535, 539 (9th Cir. 1970).[2]

■ The government concedes the remark about the diary was improper. In determining whether this requires reversal, we employ the test for nonconstitutional errors and look to whether it is more probable than not that the error materially affected the verdict. *United States v. Dixon*, 562 F.2d 1138, 1143 (9th Cir. 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978); *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977).[3] The effect of the remark, if any, was to bolster the credibility of Bradshaw. His testimony had already been backed up by King, although the defense had sought to discredit King's testimony during the trial. In addition, Lyman's counsel failed to request a curative instruction. Reviewing the case as a whole, we conclude that it was more probable than not that the remark about the diary did not materially affect the verdict.

■ Lyman makes a number of additional claims of prosecutorial misconduct, including a question asked of witness Watson as to whether the $100,000 he had loaned to Buchanan, a codefendant, was used for the purpose for which it was loaned.[4] A timely

**2.** We are aware that in at least one circuit, it has been held that the failure to interrupt during closing argument is sufficient to foreclose review except under the plain error standard. *See United States v. Ward*, 481 F.2d 185, 186–87 (5th Cir. 1973); *Samuels v. United States*, 398 F.2d 964, 967 (5th Cir. 1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969). *See also United States v. Elmore*, 423 F.2d 775, 780–81 (4th Cir.), *cert. denied*, 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970); *United States v. Nasta*, 398 F.2d 283, 285 (2d Cir. 1968). Other circuits have suggested that immediate objection during argument is the proper practice. *See Holden v. United States*, 388 F.2d 240, 242–43 (1st Cir.), *cert. denied*, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968); *Birnbaum v. United States*, 356 F.2d 856, 866 (8th Cir. 1966); *Isaacs v. United*

*States*, 301 F.2d 706, 736 (8th Cir. 1962). The Second Circuit does allow an objection at the end of a summation which is "permeated with improprieties." *United States v. Briggs*, 457 F.2d 908, 911–12 (2d Cir.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972).

**3.** Lyman also argues that the prosecution's "testimony" deprived him of his Sixth Amendment right to be confronted with the witnesses against him. This argument is unpersuasive.

**4.** The prosecutor admitted he did not know the answer to the question but indicated that he had mistakenly thought he had some foundation for the question. We have stated that "our concern is with the prejudicial *effect* of the prosecutor's error on the defendant and not, except in exceptional cases, with the inten-

objection was made. Watson answered that he did not check on what became of the money, and, therefore, as the trial court pointed out, all that was before the jury was Watson's lack of knowledge. The trial judge immediately instructed the jury to disregard both the question and the answer. While the question should not have been asked, it probably did not materially affect the verdict.

Lyman also accuses the prosecutor of misconduct due to his question of Lyman as to whether he recalled Bradshaw referring to his, Bradshaw's, resume as "flowered" and whether he recalled hearing a Dr. Werner tell him he would go to Llano to draw some samples for New Era to test. These points were sufficiently preserved for appeal. Lyman contends there was no evidence in the record to support these questions. Even if we assume there was error, we conclude it probably did not materially affect the verdict.

Lyman further asserts that the witness Justheim interjected various improper remarks to the jury during his testimony. At one point he referred to the alleged conspirators as "dirty crooks," but the jury reported it had not heard the remark. Similarly, a juror to whom Justheim spoke while he was on the stand reported that she had not heard what he was saying. We cannot assume, as Lyman wishes us to, that other jurors heard him. There was no error pertaining to Justheim's testimony.

### III

Lyman next challenges the deletion of 20 of the 24 overt acts alleged in the indictment, and claims that the government's evidence did not conform to the allegations in the indictment.

In Count I of the indictment, the grand jury charged a conspiracy and alleged at least 24 overt acts in furtherance of that conspiracy. In response to the government's pretrial motion, the district court struck 20 of the overt acts and the indict-

ment was retyped. Lyman characterizes the trial court's action as an amendment to the indictment violating his Fifth Amendment right to indictment by a grand jury. We disagree.

 While the court "may not by any means . . . alter the material and essential nature of an indictment or broaden the offense charged," *United States v. Dawson*, 516 F.2d 796, 804 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975), the court may withdraw a portion of the charge if the offense charged remains the same. *See Salinger v. United States*, 272 U.S. 542, 548–49, 47 S.Ct. 173, 71 L.Ed. 398 (1926); *United States v. Walters*, 477 F.2d 386, 388 (9th Cir.), *cert. denied*, 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973). Among the elements required to support a conspiracy conviction is proof of only one overt act in furtherance of the illegal purpose. *United States v. Feola*, 420 U.S. 671, 694, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Oropeza*, 564 F.2d 316, 321 (9th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). Thus, the striking of overt acts in the indictment neither altered the nature of the indictment nor broadened the offense charged. *United States v. Sir Kue Chin*, 534 F.2d 1032, 1036 (2d Cir. 1976); *Thomas v. United States*, 398 F.2d 531, 536–40 (5th Cir. 1967). The acts were properly stricken as surplusage if the defendant was not prejudiced by such action. *See United States v. Abascal*, 564 F.2d 821, 832–33 (9th Cir. 1977), *cert. denied*, 435 U.S. 942, 953, 98 S.Ct. 1521, 1583, 55 L.Ed.2d 538, 804 (1978). Lyman asserts no prejudice. Such deletion may occur before trial. *See Thomas v. United States, supra*, 398 F.2d at 539.

 Nor was there a material variance between the indictment and the proof during trial of the conspiracy alleged in Count I. We have held that in order to constitute grounds for reversal, a variance between

---

tional or inadvertent nature of the error itself." *United States v. Dixon*, 562 F.2d 1138, 1143 (9th Cir. 1977), *cert. denied*, 435 U.S. 927, 98

S.Ct. 1494, 55 L.Ed.2d 521 (1978) (emphasis in original). This does not appear to be such an exceptional case.

proof and indictment must affect the substantial rights of the defendant by preventing him from presenting his defense properly, taking him unfairly by surprise, or exposing him to double jeopardy. *United States v. Bolzer*, 556 F.2d 948, 950 (9th Cir. 1977); *United States v. Anderson*, 532 F.2d 1218, 1227 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976). Lyman asserts none of these grounds, but rather claims that the variance constituted an improper amendment to the indictment.

Implicit in Lyman's argument is the contention that a variance in proof may amount to a constructive amendment of the indictment. With this we may agree. *See Stirone v. United States*, 361 U.S. 212, 217–18, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Crocker*, 568 F.2d 1049, 1059–60 (3d Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 334 (6th Cir. 1977). In Lyman's case, however, no constructive amendment occurred. To show a conspiracy, the government must prove an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.. *United States v. Oropeza, supra*, 564 F.2d at 321. Those portions of the indictment Lyman claims remained unproved are allegations that the defendants conspired with the unindicted coconspirators; that the defendants obtained Llano ore; that the unindicted coconspirators aided in the distribution of fraudulent assay reports; that the defendants executed agreements to provide Llano ore to New Era; that one Brungs was defrauded; that the New Era process had not. separated precious metals in its laboratory; that certain corporations named in the indictment were incorporated under Texas law; and that certain of the defendants were their officers or agents. None of these allegations constituted an essential element of the government's proof. Their absence would

not render the remaining allegations insufficient to allege an agreement;[5] nor do they constitute allegations of intent or overt acts. Proof of these remaining portions of the indictment is unchallenged. Accordingly, regardless of whether they were proved, such allegations were surplusage in the indictment which did not require proof to support a conviction, *see United States v. Kartman*, 417 F.2d 893, 894 (9th Cir. 1969), and could have been stricken if Lyman was not prejudiced thereby. *See United States v. Abascal, supra*, 564 F.2d at 832–33. As Lyman asserts no prejudice by this claimed failure of proof, it was neither prejudicial variance nor could it be an improper amendment to the indictment.

We must also reject Lyman's claim that the failure of proof of certain of the allegations at issue rendered the evidence of the agreement among the defendants insufficient. Again, we need not decide whether the allegations were proved, for none of these allegations was a material part of the indictment. It follows that their claimed absence cannot support a claim of insufficient evidence of the crime of conspiracy.

## IV

Lyman moved before trial to dismiss the indictment against him because it named three unindicted coconspirators. Relying on *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), he claims that the grand jury was without power to name them, that doing so "caused the trial jury . . . to believe that Lyman was indicted because he was more culpable than the unindicted principals," and that this prejudiced him. He further argues that the striking of these names would have constituted an improper amendment to the indictment.

We have ordered the striking of the name of an unindicted party on grounds that the naming was beyond the authority of the grand jury and a denial of due process

---

5. Defrauding of Brungs was irrelevant to the charge of conspiracy because completion of the substantive criminal objective is not an element of the crime of conspiracy. *United States v. Carman*, 577 F.2d 556, 567 n.12 (9th Cir. 1978);

*United States v. Root*, 366 F.2d 377, 383 (9th Cir. 1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967). Actual defrauding of Brungs was not alleged in this portion of the indictment.

where "[o]ther methods less injurious" to the party were available to satisfy the numerical requirement of the statute involved. *United States v. Chadwick*, 556 F.2d 450, 450 (9th Cir. 1977) (per curiam). Lyman, however, does not seek the expunction of his own name, as Chadwick did. Thus the threshold question is whether Lyman has standing to object to the naming of an unindicted person in the indictment.

■ There are some cases which discuss the lack of standing to object in similar situations. *See In re Jordan*, 439 F.Supp. 199, 209 n.11 (S.D.W.Va.1977) (dictum); *United States v. Hansen*, 422 F.Supp. 430, 436 (E.D.Wis.1976). However, if we construe Lyman's argument as objecting merely to the wording of the indictment as it applies to him, we do not see why he should be prevented from asserting improprieties in his own indictment.[6]

■ We need not decide, however, whether the trial court erred in denying the relief sought, for we conclude on this record that Lyman was not prejudiced. An indictment is not evidence, *Mason v. United States*, 408 F.2d 903, 907 (10th Cir. 1969), *cert. denied*, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971); *see United States v. Pandilidis*, 524 F.2d 644, 648 n.5 (6th Cir. 1975), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976), and the jury was so instructed. Under these circumstances, we do not believe that the naming of the unindicted coconspirators made him appear more culpable to the jury. *See Lowther v. United States*, 455 F.2d 657, 666 (10th Cir.), *cert. denied*, 409 U.S. 857, 887, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972); *United States v. Abel*, 258 F.2d 485, 501–02 (2d Cir. 1958), *aff'd on other grounds*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). If there were any error, it was more probably than not harmless.

If, however, we construe Lyman to be asserting a violation of the due process rights of the unindicted third parties, *see United States v. Chadwick, supra*, 556 F.2d 450; *United States v. Briggs, supra*, 514 F.2d at 806, a different analysis is necessary. In this situation, the standing issue is whether Lyman may raise the constitutional rights for and on behalf of a third person not himself a party to this proceeding. In such a case,

two distinct standing questions are presented. . . . First, whether [Lyman alleges] "injury in fact," that is, a sufficiently concrete interest in the outcome of [his] suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether, as a prudential matter, [Lyman is a proper proponent] of the particular legal rights on which [he bases his claim].

*Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). As to the first, we have already held that Lyman has standing in his own right but that he was not prejudiced as the issue related to him. This leads to his desire to raise the issue on behalf of the third persons named but not directly involved in this proceeding. Thus the standing issue before us turns not on an Art. III case and controversy determination, but rather on whether, as a matter of policy, Lyman should be allowed to assert these rights of third parties.

The Court has not provided the prudential guidelines necessary for our determination with specificity. The Court has generally considered the relationship between the litigant and the third party, *e. g., Craig v. Boren*, 429 U.S. 190, 192–97, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and obstacles preventing litigation of the question by the third party himself, *e. g., NAACP v. Alabama*, 357 U.S. 449, 458–60, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). *Singleton v. Wulff, supra*, 428 U.S. at 114–16, 96 S.Ct. 2868

---

**6.** One court has indicated that standing "in the strict legal sense" is not necessary to decide an application for expunction of a grand jury "presentment." *In re United Elec., Radio & Mach. Workers of America*, 111 F.Supp. 858, 862 (S.D.N.Y.1953). The court said it would, "separate and apart" from such standing, consider the merits, among other reasons, because "[petitioners] have shown that the alleged violations have injured them." *Id.* We need not pass upon this theory.

(plurality); *see* 125–28, 96 S.Ct. 2868 (Powell, J., dissenting) (1976). *See* 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3531 (1975 & Supp.1978).

██ In analyzing these prudential qualifications, the plurality in *Singleton v. Wulff, supra,* divided with an equal number in the dissent as to what is required to meet the test. Under either description, however, we find Lyman's position wanting. No argument is made, nor do we perceive one, which convinces us that the third parties could not assert their own rights. Nor is there any relationship between Lyman and the right holders to qualify him to assert their rights. Resolution of Lyman's challenge to the naming of unindicted coconspirators does not " 'dilute [ ] or adversely affect[ ]' " those parties' rights. *See Craig v. Boren, supra,* 429 U.S. at 195, 97 S.Ct. 451 (quoting *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). It simply leaves their claims unlitigated. Thus, in this case, we invoke "a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative," *Craig v. Boren, supra,* 429 U.S. at 193, 97 S.Ct. at 455, and conclude that Lyman lacks standing to assert the third-party rights.

### V

Lyman further contends that various portions of the trial testimony established multiple conspiracies, rather than a single conspiracy. Specifically, he points to testimony that one Rindfuss sold tailings from a graphite mine to codefendant Lincecum in 1969; that Bradshaw met with two persons in Florida; that he met with O'Malley in Denver, from whom he obtained samples of graphitic material; that Bradshaw later wrote a letter stating that New Era had developed a "unique process to make concentrates salable"; that codefendant Wilson wanted to arrange to use the New Era process outside the United States; that Brungs purchased ore from O'Malley in Denver; that there was a New Era pilot project in Costa Rica; and that King traveled to Mexico to meet a man about a silver mine.

██ This evidence, however, does not raise the possibility of separate conspiracies. The Rindfuss testimony and Bradshaw's trips were relevant to the manner in which Llano ore was obtained, as was the arrangement with Wilson. The letter was entered into evidence because Justheim, a victim of the conspiracy, had seen it. Nor was there testimony about the Costa Rica project or O'Malley sufficient to suggest a separate conspiracy. King's interest in the silver mine merely established why he was in Mexico when one of the false representations about interest in Llano ore was made. We have held that the standard for determining the existence of a single conspiracy " 'is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy.' " *United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). Our review of the record, considered in the light most favorable to the government, indicates that the jury could rationally conclude beyond a reasonable doubt that there was one overall agreement. *See United States v. Perry,* 550 F.2d 524, 529 (9th Cir.), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228, 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977); *United States v. Baxter,* 492 F.2d 150, 160 (9th Cir.), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

### VI

Lyman requested an instruction which required the jury to find he had actual knowledge that Bradshaw was salting the test results in order to find him guilty. The underlying theory of the instruction is that without such knowledge, Lyman could not have been a participant in the conspiracy. Lyman's request is based on his argument that he believed in the New Era process and was unaware of the salting.

The requested instruction was completely inadequate. There was other evidence pointing toward his guilt which the instruction failed to recognize. For example, there was testimony to the effect that Lyman participated in the decision to salt; that he participated in salting the ore; and that he had participated in the false representation of purchase orders. All of this testimony bore on Lyman's knowing participation in the conspiracy. If such participation is established, it is not necessary that each conspirator be aware of all the details of the conspiracy. *See Chavez v. United States*, 275 F.2d 813, 817 (9th Cir. 1960). Further, one conspirator is liable for the acts of his coconspirators in furtherance of the conspiracy. *United States v. Oropeza, supra*, 564 F.2d at 322. While we agree that "[i]t is . . . reversible error not to instruct as to [the defendant's] theory of the case if the record contains evidentiary support for the theory and the theory is supported by law," *United States v. Noah*, 475 F.2d 688, 697 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54, 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553 (1973), we have also held that "the court is not required to accept a proposed instruction which is manifestly intended to influence the jury towards accepting the evidence of the defendant as against that of the prosecution." *United States v. Hall*, 552 F.2d 273, 275 (9th Cir. 1977). Similarly, Lyman was not entitled to an instruction that unduly restricted the possible factual bases of criminal liability. The proposed instruction was incorrect in that it made essential to Lyman's criminal liability a finding that Lyman knew Bradshaw was salting the test results. If the jury failed to find Lyman had such knowledge, it would have been precluded from basing liability upon other aspects of the government's case. Accordingly, the trial court properly refused to give the instruction.

AFFIRMED.