956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor Julio CORDERO, Defendant-Appellant.
 No. 90-30094.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1992.
Decided March 3, 1992.
 
 Before HUG, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Victor Julio Cordero raises three issues on appeal. First, he challenges his indictment because it named, but did not indict, six of his coconspirators. Second, he argues that the delay between his indictment and trial violated the Speedy Trial Act. Finally, he contends that the evidence at trial failed to establish his participation in a single overall conspiracy as charged in the indictment. We reject each of these arguments.
 
 1. Indictment
 
 3
 Cordero argues that the superceding indictment was fatally flawed because it named, but failed to indict, six of his coconspirators. Because Cordero never objected to the form of the indictment prior to his trial, he is barred from now doing so on appeal. Fed.R.Crim.P. 12(b)(2) and (f).
 
 
 4
 Further, Cordero lacks standing to challenge the grand jury's authority to return the challenged indictment. A named but unindicted coconspirator may challenge his inclusion in an indictment. United States v. Chadwick, 556 F.2d 450, 450 (9th Cir.1977) (per curiam). A third party lacks standing to do so, however, unless he shares a special relationship with the coconspirator, and the coconspirator is somehow prevented from litigating the issue himself. United States v. Lyman, 592 F.2d 496, 502-03 (9th Cir.1978). Because neither condition exists here, Cordero cannot challenge the grand jury's authority to name his unindicted coconspirators.
 
 
 5
 Cordero argues that the inclusion of the unindicted coconspirators shows that the grand jury was improperly influenced by the prosecution. This argument also fails because Cordero produced no evidence, other than the indictment itself, to support his claim. See United States v. Busher, 817 F.2d 1409, 1411 (9th Cir.1987) ("A defendant challenging an indictment ... must demonstrate that the prosecutor engaged in flagrant misconduct that deceived the grand jury or that significantly impaired its ability to exercise independent judgment.").
 
 2. Speedy Trial Act
 
 6
 We also reject Cordero's argument that the government violated the Speedy Trial Act by failing to try him within seventy days of his original indictment.
 
 
 7
 Cordero's speedy trial clock began running on March 4, 1989, the day after his initial indictment. United States v. Wirsing, 867 F.2d 1227, 1230 (9th Cir.1989). It stopped running on August 3, 1989, the day he moved to dismiss his superceding indictment under the Speedy Trial Act. Id.[1] Consequently, the total delay was 153 days--83 days more than would appear at first blush to be allowed under the Act.
 
 
 8
 Time consumed by pretrial motions is automatically excluded, however, in calculating the total amount of allowable delay. 18 U.S.C. § 3161(h)(1)(F).[2] This includes time attributable to pretrial motions filed by an appellant's codefendants. Wirsing, 867 F.2d at 1230.
 
 
 9
 Here, the pretrial suppression motions filed by Cordero's codefendants on March 30, 1989, tolled his speedy trial clock until they were resolved on August 7, 1989. As a result, 132 days of the delay were excludable under the Act (five days from March 16 through March 20 when Christodoulou's discovery motion was pending, plus 127 days from the filing of the suppression motions on March 30 to August 3, the day Cordero joined Pitsikalis's motion to dismiss the indictment). Therefore, because only 21 days expired on Cordero's speedy trial clock, the Speedy Trial Act was not violated.
 
 
 10
 We reject Cordero's contention that any delay occurring after his original trial date cannot be excluded. This argument is precluded by our decision in United States v. Aviles-Alvarez, 868 F.2d 1108 (9th Cir.1989) (pending pretrial motion tolls appellant's speedy trial clock from the day it is filed to the day it is resolved, regardless of whether an improper continuance is granted in the interim).
 
 3. Single Conspiracy
 
 11
 The superceding indictment charged Cordero with participating in a single overall conspiracy to distribute cocaine. According to Cordero, the government only established the existence of several smaller independent conspiracies. We disagree.
 
 
 12
 We examine several factors in determining whether a single conspiracy has been proven. These include: "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984).
 
 
 13
 It is clear that a single conspiracy existed here. There was an ongoing scheme to buy cocaine in California, transport it to Seattle, and resell it at a profit. The core participants in this scheme, Lewis, Shafer, and Peters, remained the same throughout the conspiracy. Further, each assisted the conspiracy by either buying the cocaine, transporting it from California, or, when necessary, recruiting additional sources of supply. Finally, each shared a common goal--to make a profit from the resale of the cocaine.
 
 
 14
 Cordero knowingly participated in this conspiracy. He was aware that Lewis was buying cocaine for resale in Seattle. He also knew that Lewis was not the only participant in this scheme. On various occasions, Cordero met with Mickey Thorton, Randy Lewis, and Floyd Shafer, to discuss arrangements for selling and transporting cocaine. Cordero also knew Lewis was buying cocaine from Z. Cordero benefitted from this arrangement because it helped to assure a constant supply of cocaine to satisfy the conspiracy's customers and keep the coconspirators in business.
 
 
 15
 We conclude a reasonable jury could have found that Cordero knowingly participated in the single overall conspiracy charged by the indictment.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 FN1
 Because a defendant's speedy trial clock is tolled when any of his codefendants files a pretrial motion, Wirsing, 867 F.2d at 1230, Cordero's clock may actually have stopped running on July 26, the day Pitsikalis moved to dismiss his indictment under the Speedy Trial Act. Whether Cordero's clock stopped on July 26 or August 3 does not affect the speedy trial analysis in this case, however. Consequently, we use August 3 as the concluding date for purposes of this discussion, since it is clear that Cordero's speedy trial clock had expired by that time
 
 
 FN2
 The time attributable to a pretrial motion includes the day it was filed, the day it was disposed of by the court, and all the time in between. Wirsing, 867 F.2d at 1231