Frederick **WILLIAMS**, Appellant,

v.

**UNITED STATES**, Appellee.

Josef **RATCLIFF**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 93–CF–405, 93–CF–516.

District of Columbia Court of Appeals.

Argued March 24, 1994.
Decided May 9, 1994.

Leslie B. Holt, Washington, DC, for appellant Williams.

Thomas Heslep, Washington, DC, for appellant Ratcliff.

D. Shane Read, with whom Richard W. Roberts, Acting U.S. Atty., John R. Fisher, Thomas C. Black, and Edward F. McCormick, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, Acting Chief Judge and TERRY and KING, Associate Judges.

FERREN, Acting Chief Judge:

An indictment filed on November 18, 1992 charged Josef Ratcliff and Frederick Williams with (1) conspiracy, D.C.Code § 22–105a(a) (1989); (2) second degree burglary while armed, D.C.Code § 22–1801(b), –3202 (1989); (3) armed robbery of Shawn McCall, D.C.Code § 22–2901, –3202 (1989); (4) armed robbery of Renwick Adams, D.C.Code § 22–2901, –3202; (5) assault with intent to commit robbery while armed against Santos Arias, Guillermo Arias, and Antquan Dickson, D.C.Code § 22–501, –3202 (1989); (6) possession of a firearm during a crime of violence or dangerous offense, D.C.Code § 22–3202 (1989); and (7) first degree theft, D.C.Code § 22–3811, –3812(a) (1989). Appellant Ratcliff also was charged with obstructing justice, D.C.Code § 22–722(a)(3) (1989). Before trial, the prosecutor orally modified the indictment by substituting for the references to armed robbery (counts 3 and 4 above) and assault with intent to commit armed robbery (count 5 above) the lesser included offense of assault with a dangerous weapon. On February 3, 1993, a jury convicted appellants on all charges.

On appeal, Ratcliff and Williams contend that (1) their three convictions for assault with a dangerous weapon merge and that (2) the trial court abused its discretion by permitting the government to change the indictment before trial, without first resubmitting its evidence to a grand jury. In addition, appellant Ratcliff argues that (3) the trial court abused its discretion by permitting the government to introduce a stocking as demonstrative evidence and that (4) the trial court erred by refusing to give a "missing notes" instruction and by permitting a police witness to testify, even though he had lost Jencks [1] material. Because the government concedes that each of appellants' three convictions for assault with a dangerous weapon merge, we remand the case for the trial court to adjust appellants' sentences accordingly. Otherwise, we affirm.

## I.

At approximately 10:15 p.m. on September 25, 1992, an armed man with a woman's stocking over his head entered the McDonald's on 1901 Ninth Street, N.E. Shawn McCall, Renwick Adams, Santos Arias, Guillermo Arias, and Antquan Dickson were the McDonald's employees on duty at the time, and appellant Ratcliff was their manager. The man, later identified as Michael Goss, pointed a gun at Adams and ordered him to lock the doors. Before Adams could obey, Ratcliff locked the doors. Goss then ordered Ratcliff to put everyone in the freezer, and he did. Adams was still wearing his drive-through headphones, however, and announced to the cars in the drive-through line, "This is not a joke. Our store is being robbed."

Wayne Stancil, an officer with the Metropolitan Police Department, happened to be in the drive-through line and heard Adams' plea for help. He drove to the second window where he saw Goss in front of the counter with a travel bag and a gun. Officer Stancil then watched Goss leave the store and chased him through a shopping center parking lot, eventually arresting Goss after the getaway car driven by appellant Williams would not start. From inside the car, Officer Stancil recovered a travel bag with $1,135.68 and a plastic gun that resembled an Uzi.

During trial, the government called Doreen Watts as a witness. She explained that Ratcliff, his cousin Nanette, and Nanette's husband, Fred Williams, were all living in her apartment in September 1992. Watts testified that on September 22, she rode the bus to St. Elizabeths to sign the release for

1. See 18 U.S.C. § 3500 (1985); Super.Ct.Crim.R. 26.2 (1993).

Goss, a friend of hers. She brought Goss back to her apartment and introduced him to Nanette, Ratcliff, and Williams. Later, when Watts went to her room to change her clothes and take a nap, she overheard a conversation between Goss and Ratcliff. She explained, "I heard [Goss] asking [Ratcliff] was it a security system and what would be the best time because [of] the security system and how many people would be there." Ratcliff replied that there was no security system and that the best time to come was at 11:00 p.m. when the drive-through window was closed. Ratcliff said that four people would be there. He also said that there would be about $1,800 in the safe and that he knew the combination.

## II.

■ Before trial, the prosecutor orally modified the indictment by substituting three lesser included offenses of assault with a dangerous weapon (ADW) for the two counts of armed robbery and for the count of assault with intent to commit armed robbery. The prosecutor frankly admitted that the evidence the property was taken from the person or the immediate actual possession of each of the McDonald's employees was too weak to justify the greater charges. Appellants contend that the trial court abused its discretion by permitting the government to change the indictment before trial, without resubmitting its evidence to a grand jury.

■ In *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court concluded that a defendant's Fifth Amendment grand jury right[2] is violated when the indictment is amended by trial evidence that broadens the possible bases for conviction. The Court clarified *Stirone* in *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), by explaining that it is constitutionally permissible for a court to narrow an indictment by dropping "those allegations that are unnecessary to an offense that is clearly contained within it." *Id.* at 144, 105 S.Ct. at 1819. *Miller*, however, concerned an indictment that was altered during the course of trial. The Supreme Court has not yet addressed whether the Constitution permits the court, on motion by the government, to narrow an indictment before trial. Consistent with *Miller*, however, we conclude that a defendant's Fifth Amendment right to indictment by a grand jury will not be violated, regardless of whether the indictment is narrowed before, during, or after trial, as long as the narrowed indictment is not prejudicial to the defendant, *i.e.*, as long as it "alleges the essential elements of the charged offense, sufficiently informs the defendant of the charges which he [or she] must defend, enables him [or her] to plead it to bar further prosecutions for the same offense, and does not broaden the charges against the defendant." *United States v. Morris*, 728 F.Supp. 95, 96 (N.D.N.Y.1990) (no reason to treat narrowing of indictment before trial differently from narrowing of indictment during or after trial provided dropped allegations are unnecessary to offense clearly contained in indictment); *see also United States v. Lyman*, 592 F.2d 496, 500–01 (9th Cir.) (proper to strike allegations in indictment that are "surplusage," requiring no proof to support conviction, so long as defendant is not prejudiced), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979).[3]

---

2. The Grand Jury Clause reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V.

3. Because removal of surplusage merely narrows the indictment by eliminating allegations of fact that were not necessary to support a conviction, *see Lyman*, 592 F.2d at 501, this narrowing of the indictment is neither an "amendment" nor a "variance." In *Scutchings v. United States*, 509 A.2d 634, 636 (D.C.1986), we explained:

The law recognizes two types of departures from the original indictment:

An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.

(quoting *Gaither v. United States*, 134 U.S.App. D.C. 154, 164, 413 F.2d 1061, 1071 (D.C.1969)). When surplusage is removed, there is not really a "departure[ ] from the original indictment" because the charges have not been broadened and

Because ADW is a lesser included offense of each charge for which an ADW charge was substituted, the indictment in this case clearly was narrowed rather than broadened. *See Norris v. United States,* 585 A.2d 1372, 1374 (D.C.1991) (assault with a dangerous weapon is lesser included offense of armed robbery); *United States v. Alston,* 157 U.S.App. D.C. 261, 263, 483 F.2d 1264, 1266 (1973) ("Assault with a dangerous weapon is a lesser included offense of assault with intent to commit robbery while armed."). In addition, by substituting lesser included offenses, the indictment undoubtedly alleged the essential elements of the charged offenses.

Furthermore, from the time they were indicted, appellants were on notice that they needed to defend against all lesser included offenses of armed robbery and of assault with intent to commit robbery. Because the government changed the indictment before trial, rather than waiting for the court to grant a motion for judgment of acquittal on the armed offenses, appellants were relieved of defending against charges that cash had been taken from the cashiers, and thus could focus their efforts on the other evidence presented.

Accordingly, the trial court did not abuse its discretion by permitting the government to change the indictment before trial without resubmitting its evidence to a grand jury. *See Lyman,* 592 F.2d at 500–01 (deletion from indictment of 20 of 24 overt acts in furtherance of conspiracy did not violate defendant's Fifth Amendment right to indictment by grand jury even though indictment was altered before trial); *Morris,* 728 F.Supp. at 95–96 (constitutional for government to withdraw references in indictment to certain Air Force base before trial when government intended to offer no evidence at trial that defendant intentionally accessed computer at that Air Force base). *Cf. Coreas v. United States,* 585 A.2d 1376, 1380 (D.C.) (new indictment not required when defendant subsequently charged with a lesser included offense), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 130 (1991); *Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 765 (3d Cir.1982) (where judge

no "materially different" facts have been prof-

granted motion for judgment of acquittal for assault with intent to commit robbery, government permitted to modify information during trial to charge assault with a dangerous weapon because language of count contained necessary elements of assault with a dangerous weapon).

## III.

During the government's cross-examination of Ratcliff, the prosecutor—who was white—placed a black stocking over his head to demonstrate to the jury that he could be recognized under it. Defense counsel objected because the robber allegedly was black and the robber's face would not appear through the black stocking as clearly as the white prosecutor's face would appear during the in-court demonstration. For this reason, defense counsel claimed that the potential prejudice of the evidence to the defendant outweighed its probative value. Although Ratcliff testified that the stocking used by the prosecutor was lighter than the one used during the robbery, the prosecutor called Adams as a rebuttal witness, who testified that the stocking was similar in sheerness to the one worn by the robber. The trial court admitted the stocking in evidence, explaining that defense counsel's concerns should go to the weight of the evidence, not to its admissibility. Ratcliff contends the trial court abused its discretion.

"Decisions regarding the admission of demonstrative evidence rest within the broad discretion of the trial court...." *Taylor v. United States,* 601 A.2d 1060, 1066–67 (D.C. 1991). "The trial court may permit introduction of such evidence if it is 'sufficiently explanatory or illustrative or relevant testimony in the case to be of potential help to the trier of fact.'" *Brown v. United States,* 464 A.2d 120, 123 (D.C.1983) (quoting McCormick on Evidence § 212, at 528 (2d ed. 1972)). In admitting the stocking in evidence, the court acted well within its broad discretion applied to the facts here.

## IV.

Finally, appellant Ratcliff argues that the trial court erred in refusing to give a

fered. *Scutchings,* 509 A.2d at 636.

missing notes instruction and in permitting a police witness to testify even though he had lost Jencks material. See *supra* note 1. Specifically, Ratcliff argues that (1) Officer Jeffrey Madison should not have been permitted to testify as to how Ratcliff described the robber when he interviewed Ratcliff immediately after the robbery, because Officer Madison had lost his police notes of the interview and, in any event, that (2) after Officer Madison had testified, the trial court should have given a missing notes instruction.

■ Because the notes reflected a statement made by the defendant rather than a statement made by a government witness, they are governed by Super.Ct.Crim.R. 16 (1993), not by the Jencks Act, see *supra* note 1, as incorporated in Super Ct.Crim.R. 26.2 (1993). In any event, "[w]here there has been a breach of a discovery rule, the trial court has the authority to fashion an appropriate sanction." *Cotton v. United States,* 388 A.2d 865, 869 (D.C.1978). Here, the trial court concluded that Officer Madison's notes had not been purposefully or maliciously destroyed but instead had been lost through mere negligence. Furthermore, because the description contained in the notes was immediately incorporated and broadcast in the radio run, and the prosecutor made the transcript of the radio run available to defense counsel, the trial court ruled that a missing notes instruction was not necessary.

We conclude that, whether Rule 16 or Rule 26.2 had been applicable, the trial court did not abuse its discretion by permitting Officer Madison to testify or by refusing to give a missing notes instruction. *See Sheffield v. United States,* 397 A.2d 963, 967 (D.C.) ("where the loss of evidence is the result of no bad faith on the part of the government, the trial court may decline to apply sanctions"), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *Lee v. United States,* 385 A.2d 159, 164 (D.C.1978) (a showing of substantial prejudice is necessary to justify reversal under Rule 16); *Reed v. United States,* 383 A.2d 316, 320–21 (D.C.) (trial court did not abuse discretion in refusing to give missing notes instruction where officer lost his notes of a victim's description

of her assailant and description was simultaneously broadcast over radio), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978).

\* \* \* \* \* \*

The judgment on appeal is hereby affirmed, except for each of appellants' three convictions for assault with a dangerous weapon, which merge. We remand the case accordingly to the trial court for resentencing.

*So ordered.*